J-S48039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAYLAUN COLEMAN, | : | |
| | : | |
| Appellant | : | No. 37 WDA 2016 |

Appeal from the Judgment of Sentence December 4, 2015
in the Court of Common Pleas of Mercer County,
Criminal Division, No(s):  CP-43-CR-0000586-2015

BEFORE:  BOWES, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JULY 29, 2016**

Jaylaun Coleman ("Coleman") appeals from the judgment of sentence imposed following his conviction of two counts of robbery.[1]  We affirm.

On March 26, 2015, Coleman sent Tyrone Cornish ("Cornish") a text to come over to Coleman's house.  Upon Cornish's arrival, Coleman informed Cornish that he "planned to get some money in [Coleman's] pocket."  They then left the house and walked around for a while until Coleman suggested that they rob the George Street Market.  Cornish attempted to talk Coleman out of the robbery.

Coleman and Cornish then entered the market.  Coleman began waving around a gun and ordered Clifford Grear ("Grear"), an employee working the register, to give him money.  The owner of the market then appeared, slapped his hand on the table, and moved toward Coleman and

---

[1] **See** 18 Pa.C.S.A. § 3701(a)(1)(ii), (iv).

Cornish. Coleman and Cornish fled the market. They were later caught and arrested. Coleman was fifteen years old at the time of arrest.

The Commonwealth charged Coleman with two counts of robbery. Following a preliminary hearing he was held for trial on both. Coleman filed a Motion for Decertification, seeking to remove his case to the juvenile system. Following a decertification hearing, the trial court denied the Motion.

The Commonwealth amended the criminal Information to include the charge of a minor not to possess a firearm. The case proceeded to a jury trial. At the conclusion of the Commonwealth's case, Coleman was acquitted of the minor not to possess a firearm charge. The jury subsequently found Coleman guilty on both robbery charges. On December 4, 2015, the trial court imposed an aggregate sentence of 22 months to 7 years in prison. Coleman filed a Post-Sentence Motion, which was denied.

Coleman filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Coleman raises the following issues for our review:

1. [Whether] [t]he trial court erred when it denied Coleman's Motion for Decertification when it ruled that Coleman did not show by a preponderance of the evidence [that] he was amenable to treatment in the juvenile justice system[?]

2. [Whether] [t]he trial court erred when it denied Coleman's Motion for judgment of acquittal when the Commonwealth failed to produce evidence necessary to prove an element of robbery[?]

- 2 -

3. [Whether] [t]he trial court erred when it issued a clearly unreasonable sentence to Coleman for [r]obbery [,] resulting in a 22 month to 7[-]year jail sentence[,] in violation of a fundamental norm where a sentence of confinement should address a defendant's rehabilitative needs[?]

Brief for Appellant at 7-8 (issues numbered).

In his first claim, Coleman challenges the trial court's denial of his Motion for Decertification. *Id.* at 20. Coleman argues that the testimony of Dr. Albert Scott ("Dr. Scott"), a juvenile corrections counselor for over forty years, regarding Coleman's mental illness and medical conditions and failure of the adult prison system to address Coleman's needs, are sufficient to justify decertification. *Id.* at 23-29, 30. Coleman additionally argues that his unidentified and untreated mental illnesses are the cause of his uncooperative behavior and failed prior attempts at rehabilitation. *Id.* at 28.

When evaluating a decertification decision, our standard of review is as follows:

> The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. *Commonwealth v. Sanders*, 814 A.2d 1248, 1251 (Pa. Super. 2003). This Court will not overturn a decision to grant or deny decertification absent a gross abuse of discretion. *Id.* at 1250. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice, or ill will. *Commonwealth v. Pennington*, 751 A.2d 212, 218 (Pa. Super. 2000).

*Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011).

> When a case goes directly to criminal division, the juvenile has the option of requesting treatment within the juvenile system through a transfer process of "decertification." In

- 3 -

determining whether to transfer such a case from criminal division to juvenile division, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest.

***Sanders***, 814 A.2d at 1250 (citations and quotation marks omitted).

The following factors are to be considered when deciding whether a juvenile should be transferred:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

   (I) age;

   (II) mental capacity;

   (III) maturity;

   (IV) the degree of criminal sophistication exhibited by the child;

   (V) previous records, if any;

   (VI) the nature and extent of any prior delinquent history, including the success or failure or any previous attempts by the juvenile court to rehabilitate the child;

   (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

> (VIII) probation or institutional report, if any;
>
> (IX) any other relevant factors.

42 Pa.C.S.A. § 6355(a)(4)(iii)(A)-(G).

A decertification court must consider all the factors set forth in section 6355; however, the court need not address, *seriatim*, the applicability and importance of each factor and fact in reaching its decision. *Sanders*, 814 A.2d at 1251; *Commonwealth v. Jackson*, 723 A.2d 1030, 1033-34 (Pa. 1999). Additionally, when evaluating the lower court's decision, the reviewing court must presume that the lower court carefully considered the entire record. *Sanders*, 814 A.2d at 1251.

During Coleman's decertification hearing, Coleman's expert, Dr. Scott, testified to Coleman's mental health. N.T., 07/21/15, at 7. After evaluating Coleman, Dr. Scott found that Coleman had "Bipolar I Disorder, unspecified, with psychotic features; Conduct Disorder - Adolescent Onset Type; Specific Learning Disability with impairment of mathematics, calculation and problems with math reasons; cannabis use disorder, moderate; delusional disorder, persecutory type aggression problems." *Id.* at 17. Dr. Scott urged that, although an individual cannot be formally diagnosed with an antisocial or narcissistic personality disorder until they are 18, Coleman's personality was evolving into that. *Id.* Dr. Scott opined that he felt that the adult prison system could not and would not meet Coleman's psychiatric needs. *Id.* at 22. However, Dr. Scott admitted that he did not have access to Coleman's juvenile records in formulating his opinion. *Id.* at 29.

Joshua Leskovac ("Leskovac"), Coleman's juvenile probation officer's supervisor, testified that Coleman had many opportunities within the juvenile system to attend rehabilitation programs or classes and take medications, but Coleman refused all of them. *Id.* at 41-42, 44, 48-52. Leskovac concluded by stating that as long as a juvenile refuses to cooperate with treatment options, the juvenile justice system will be unsuccessful. *Id.* at 73.

Here, while the decertification court shared Dr. Scott's concern regarding Coleman's placement in the adult correctional system, the court relied on Leskovac's testimony that Coleman had failed to comply with numerous programs in the juvenile system. *Id.* at 82; *see also Commonwealth v. Johnson*, 517 A.2d 1311, 1316 (Pa. Super. 1986) (stating that it is for the fact-finder to determine credibility of witnesses and they are "free to reject it, accept it, or give it some weight between the two").

Further, the decertification court analyzed the factors set forth in 42 Pa.C.S.A. §6355(a)(4)(iii)(A)-(G), including *inter alia*, Coleman's age, mental capacity, maturity level, the fact that Coleman's criminality appears to be escalating, and the impact on the victims and the community. *See* N.T., 07/21/15, at 66-84. Because we cannot reweigh the evidence, and the court considered the various section 6355 factors, we conclude that the decertification court did not abuse its discretion in denying Coleman's Motion

- 6 -

for Decertification. *See Commonwealth v. Ruffin*, 10 A.3d 336, 339-40 (Pa. Super. 2010) (concluding that denial of decertification was proper where the juvenile had committed actions that were those of an adult, had been given multiple opportunities for rehabilitation but kept re-offending, and, according to a probation officer, there were no juvenile programs that would be suitable for the juvenile as he had exhausted his treatment plans).

In his second claim, Coleman contends that the trial court erred in denying his Motion for judgment of acquittal where the Commonwealth failed to produce sufficient evidence necessary to prove robbery. Brief for Appellant at 31. Coleman argues that the Commonwealth failed to prove that Coleman's entry into the store was for the purpose of theft. *Id.* at 32.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Hopkins*, 747 A.2d 910, 913 (Pa. Super. 2000) (citations omitted).

- 7 -

The Crimes Code defines robbery, in relevant part, as follows:

\*     \*     \*

(1) a person is guilty of robbery if, in the course of committing a theft, he:

\*     \*     \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

\*     \*     \*

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

\*     \*     \*

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A. § 3701.

Here, Coleman sent a text to Cornish, asking him to come to Coleman's home. N.T., 02/25/16, at 22. Once Cornish reached Coleman's home, Coleman informed Cornish that Coleman "planned to get some money in his pocket." *Id.* at 24. They left the house and walked for a while, until they reached the George Street Market. *Id.* at 27. After Coleman suggested that they rob the market, the two then entered the market wearing masks, and Coleman waived a gun, asking an employee for money. *Id.* at 28, 31. The owner then appeared, and Coleman and Cornish fled the market. *Id.* at 32.

Furthermore, employees Grear, Eihab Jamal and Ali Omar testified that Coleman entered the store wearing a mask and carrying a weapon. N.T., 02/25/16, at 57-66. The employees stated that Coleman pointed a gun at Grear, while requesting money from the cash register. *See id.*

Viewing the evidence in a light most favorable to the Commonwealth, as the verdict winner, we conclude that when Coleman entered the store, waved a gun around and demanded money, he intended to commit a theft. Thus, the evidence is sufficient to show that Coleman committed a robbery. *See Commonwealth v. Robinson*, 936 A.2d 107, 110 (Pa. Super. 2007) (concluding that evidence was sufficient to support robbery conviction where victim testified that defendant entered bar, put gun to her neck, and demanded money).

In his final claim, Coleman challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, *see* Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either; (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (quotation marks and some citations omitted).

Here, Coleman filed a timely Notice of Appeal, raised his claims in a timely Post-Sentence Motion, and included a Rule 2119(f) statement in his brief. However, Coleman's claim that the trial court did not properly consider his age or rehabilitative needs does not raise a substantial question. *See Commonwealth v. Berry*, 785 A.2d 994, 997 (Pa. Super. 2001) (concluding that a claim that the sentencing court did not consider rehabilitative needs of juvenile defendant tried as an adult did not raise a substantial question for purposes of appeal). Thus, we cannot address Coleman's sentencing claim.[2]

Judgment of sentence affirmed.

---

[2] We note that the trial court had the benefit of a pre-sentence investigation report. *See* N.T., 12/04/15, at 7; *see also Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004) (stating that "where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors"). The trial court also considered the Victim Impact Statements, the Sentencing Guidelines, Coleman's prior criminal history, the seriousness of the crimes, and Coleman's age in rendering the sentence. N.T., 12/04/15, at 7-10.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2016