COMMONWEALTH of Pennsylvania, Appellant

v.

Nicholas RUFFIN, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 25, 2010.

Filed Dec. 1, 2010.

Stanton M. Lacks, Bensalem, for appellant.

David W. Hecker, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

BEFORE: MUSMANNO, PANELLA and SHOGAN, JJ.

OPINION BY PANELLA, J.:

Appellant, Nicholas Ruffin, appeals the judgment of sentence entered on June 25, 2009, by the Honorable Rea Behney Boylan, Court of Common Pleas of Bucks County. After careful review, we affirm.

The record in the case *sub judice* reveals that following a jury trial on June 24–25, 2009, Ruffin was found guilty of conspiracy to commit armed robbery, 18 Pa.Cons.Stat.Ann. §§ 903, 3701(a)(1)(ii). Subsequent thereto, the trial court sentenced Ruffin to a period of not less than four nor more than ten years' imprisonment. This timely appeal followed.

On appeal, Ruffin raises the following issues for our review:

I.  DID THE TRIAL COURT ERR IN DENYING THE DEFENSE MOTION TO TRANSFER THE CASE TO JUVENILE COURT?

II.  DID THE TRIAL COURT ERR IN REFUSING DEFENSE REQUEST THAT SGT. RACE NOT BE ALLOWED TO DISCUSS DE-

FENDANT'S NON–COOPERA-TION?

Appellant's Brief, at 3.

█ We begin by reviewing Ruffin's first issue wherein he argues that the trial court erred in denying his motion to transfer the case to juvenile court.

Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will. *Commonwealth v. Sanders*, 814 A.2d 1248, 1250 (Pa.Super.2003).

*Commonwealth v. Ramos*, 920 A.2d 1253, 1257(Pa.Super.2007), *appeal denied*, 594 Pa. 678, 932 A.2d 1288 (2007).

█ Pursuant to 42 PA.CONS.STAT.ANN. § 6322(a) and § 6355(e), when a juvenile has been charged with a crime listed under paragraph (2)(ii) or (iii) of the definition of "delinquent act" in 42 PA.CONS.STAT.ANN. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. "Conspiracy to Commit Robbery", when the juvenile is 15 years of age or older at the time of the alleged conduct, and where a deadly weapon as defined in 18 PA.CONS.STAT.ANN. § 2301 was used during the commission of the offense, is one of the offenses listed which requires jurisdiction to vest in the criminal division. *See* 42 PA.CONS.STAT.ANN. § 6302(ii)(D), (I).

█ When a case goes directly to the criminal division the juvenile has the option of requesting treatment within the juvenile system through the transfer process of decertification. *See Commonwealth v. Aziz*, 724 A.2d 371, 373 (Pa.Super.1999), *appeal denied*, 563 Pa. 670, 759 A.2d 919 (2000). In determining whether to transfer such a case from the criminal division to the juvenile division, "the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." 42 PA.CONS. STAT.ANN. § 6322(a). *See also Aziz*, 724 A.2d at 373.

Pursuant to § 6322(a), the decertification court must consider the factors contained in § 6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest. The statutorily set factors to be considered are as follows:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age; (II) mental capacity; (III) maturity; (IV) the degree of criminal sophistication exhibited by the child; (V) previous records; if any; (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child; (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction; (VIII) probation or institutional reports, if any; (IX) any other relevant factors;

42 Pa.Cons.Stat.Ann. § 6355(a)(4)(iii)(A)-(G).

▮ Although the Juvenile Act requires that a decertification court consider all of the amenability factors, it is silent as to the weight that should be assessed to each factor. *See Commonwealth v. Jackson,* 555 Pa. 37, 45, 722 A.2d 1030, 1033 (1999). The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. *See id.,* 555 Pa. at 45, 722 A.2d at 1034. A decertification court must consider all the facts set forth in § 6355 of the Juvenile Act, but it need not address, *seriatim,* the applicability and importance of each factor and fact in reaching its final determination. *See id.*

In *Jackson,* our Supreme Court offered the following instruction regarding the extent to which the decertification court must explain its reasoning in order to provide meaningful appellate review:

> The presumption in this Commonwealth remains that if a court has facts in its possession, it will apply them. *See Commonwealth v. Devers,* 519 Pa. 88, 102, 546 A.2d 12, 18 (1988) (presuming that trial court considered pre-sentencing report); *Commonwealth v. Lee,* 703 A.2d 470, 474 (Pa.Super.1997); *Commonwealth v. McGinnis,* 450 Pa.Super. 310, 317, 675 A.2d 1282, 1286 (1996); *Commonwealth v. McDonald,* 399 Pa.Super. 250, 258, 582 A.2d 328, 331 (1990). When evaluating the propriety of a certification decision, absent evidence to the contrary, a reviewing court must presume that the juvenile court carefully considered the entire record.
>
> No law explicitly requires juvenile courts in this Commonwealth to provide a detailed explanation to justify a certification decision. . . .
>
> Meaningful appellate review of a certification decision becomes onerous when the reviewing court can not discern a juvenile court's reasons for finding a youth not amenable to juvenile treatment. However, a juvenile court need not annunciate each of its reasons in a formal certification statement. . . .

*Id.,* 555 Pa. at 46–47, 722 A.2d at 1034–1035 (footnote omitted).

Here, Ruffin contends that in assessing the factors outlined in § 6335, "the trial court overemphasized the negative factors including Defendant's age while overlooking extensive testimony supporting amenability to treatment." Appellant's Brief, at 11. We disagree and find that the trial court correctly concluded that Ruffin failed to establish by a preponderance of the evidence that a transfer will serve the public interest.

While Ruffin argues that he is amenable to treatment, and in support thereof admitted four certificates demonstrating his good conduct, employability and achievement, *see* N.T. Trial, 6/24/09, at 6, the record clearly supports the opposite conclusion. At a decertification hearing held prior to trial on June 24, 2009, the trial court received testimony from Ruffin's juvenile probation officer, Detective Nieves and the victim. Bucks County Juvenile Probation Officer John Gryn testified that Ruffin is eighteen years old and has been in the juvenile system since 2003. *See id.,* at 9–10. Since 2003, Ruffin has been routinely adjudicated delinquent and placed in treatment programs. *See id.,* at 10–19.

Ruffin's past has caught up with him. In October 2003, Ruffin was adjudicated delinquent on two counts of aggravated assault, two counts of simple assault, two counts of recklessly endangering another person, two counts of terroristic threats, and one count of possession of instrument of crime. Ruffin was placed on indefinite probation, and later participated in the

ACT outward bound program and assigned to work in the community-based Neighborhood First Program for juveniles. *See id.*, at 10. In April 2005, Ruffin was adjudicated delinquent of misdemeanor disorderly conduct and carrying a BB gun on a highway. *See id.*, at 10–11. Ruffin was once again given indefinite probation and two ACT weekends. *See id.*, at 11. Ruffin continued to violate the terms of his probation by missing school, smoking on school property, and harassing other students. *See id.* As a result of adjudications for harassment, disorderly conduct and receiving stolen property, Ruffin was placed on probation and ordered to complete 31 days of the outward bound program. *See id.* In November 2005, Ruffin was again adjudicated delinquent of robbery, this time of an undercover police detective who was posing as a pizza deliveryman. *See id.*, at 12. As a result, Ruffin was placed in an Alternative Rehabilitation Community Secure Program for one year and then stepped down into an ARC residential program for approximately six to seven months. *Id.*

Then, less than one month after being released from the ARC program, Ruffin submitted a urine test that was positive for marijuana. *See id.*, at 13. By the time a probation violation had been assessed against Ruffin, he was routinely missing appointments and mandatory group meetings, and again tested positive for marijuana. *See id.* He was found delinquent and ordered to work with the Community Service Foundation Home and Community School Program. *See id.*, at 14–15.

In 2007, Ruffin was adjudicated delinquent of resisting arrest. *See id.* The juvenile court again placed Ruffin in a treatment program called Youth Services Camp Adams for 60 days. *See id.* Upon completion of the program, Ruffin returned home on probation; however, in May 2008 he violated his probation due to drug use and was ordered in Today Incorporated program for two months. *See id.*, at 15. Ruffin's last involvement with the juvenile system came in September of 2008 when he was adjudicated delinquent for receiving stolen property, firearms not to be carried by a minor, possession of a firearm of a minor, possession of an instrument of crime, terroristic threats and simple assault. *See id.*, at 16.

Based upon the foregoing, it was evident to the trial court that Ruffin had been given multiple opportunities by the juvenile court for rehabilitation, and yet Ruffin kept re-offending, putting the safety of the public at risk. According to Probation Officer Gryn, there are currently no juvenile programs that would be suitable for Ruffin as he has exhausted his treatment plans. *See id.*, at 17–19.

Ruffin is 18 years old and his actions are those of an adult. We therefore agree with the trial court that Ruffin should be treated in the criminal division since he has proven time and again that the rehabilitation offered has not been effective. As the juvenile court's jurisdiction over Ruffin ends when he turns 21, we are in agreement that decertification was not warranted. Based upon this record, the trial court ably considered all of the relevant factors at the time of the hearing.

■ In his second issue raised for our review, Ruffin asserts that the trial court erred in refusing the defense request that Sergeant Race not be allowed to discuss Ruffin's non-cooperation. *See* Appellant's Brief, at 12. Specifically, Ruffin argues that Sergeant Race's testimony was in contravention of the trial court's ruling resulting in a tacit admission by silence violating Ruffin's constitutional rights. We disagree.

The admissibility of evidence is within the sound discretion of the trial court, wherein lies the duty to balance the evidentiary value of each piece of evidence against the dangers of unfair prejudice, inflaming the passions of the jury, or confusing the jury. *See Commonwealth v. Dillon,* 592 Pa. 351, 367, 925 A.2d 131, 141 (2007). We will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. *See Commonwealth v. Champney,* 574 Pa. 435, 457, 832 A.2d 403, 416 (2003), *cert. denied,* 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004).

At the time of trial, the Commonwealth asked Sergeant Race to "describe your interactions with the defendant" which resulted in an objection by defense counsel and a subsequent conversation at side bar. N.T. Trial, 6/25/09, at 70–71. At sidebar, the trial court requested an offer of proof for Sergeant Race's testimony to which the Commonwealth responded:

> MR. SIEGLE: When I spoke to him— the police report said the defendant was generally uncooperative, and when I spoke to him yesterday he said the defendant was, his best way he could say it was, verbally confrontational and refused to give identification. He kept talking or pretending to talk on his cell phone. The others were generally cooperative and provided identification.

*Id.* The trial court carefully weighed the Commonwealth's offer of proof and permitted Sergeant Race to testify that Ruffin was confrontational and ignored the Sergeant by talking on his cell phone. *See id.,* at 72–73. Testimony resumed on the record and the following exchange took place:

BY MS. SIEGLE:

Q: The defendant was confrontational with you, yes?

A: He was noncompliant with our initial attempts of the investigation.

Q: Did he continually speak or pretend to spoken [sic] on his cell phone?

A: He did [.]

*Id.,* at 72.

The testimony elicited from Sergeant Race was clearly within the parameters set forth by the trial court's ruling. As such, we can find no abuse of discretion on the part of the trial court in so ruling and allowing such testimony over defense counsel's objection. Ruffin was not unfairly prejudiced by said testimony nor did it violate his constitutional rights.

Judgment of sentence affirmed. Jurisdiction relinquished.