J-S08028-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| I.T.S., | |
| | No. 1299 WDA 2017 |

Appeal from the Order entered August 30, 2017,
in the Court of Common Pleas of Indiana County,
Criminal Division at No(s): CP-32-CR-0001268-2016.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 25, 2018**

In this matter, the Commonwealth appeals the trial court's decision to transfer the criminal case of the juvenile Appellee, I.T.S., from adult proceedings to juvenile court. Because the trial court's decision was not a gross abuse of discretion, we find the decertification of the case was proper. We affirm.

We summarize the factual and procedural history of this case as follows. On October 27, 2016, at around 1 a.m., Pennsylvania State Police Trooper John McCombie was assigned to investigate a double homicide at a residence in Clymer, Pennsylvania. The victims were Timothy Gardner, found on the first floor, and Jacqueline Brink, found in a second-floor bedroom. It was further discovered that two children, unharmed, had been removed from the

_____
*Former Justice specially assigned to the Superior Court.

residence by first responders. Trooper McCombie interviewed the decedents' next-door neighbor, who witnessed I.T.S. leaving the scene.

I.T.S. indicated that he was contacted by one of the two adult co-defendants to sneak out of his residence to meet up with them to purchase drugs from Gardner. Co-defendant Nathanial Price texted I.T.S. during the evening of October 26, 2016. The text read: "True I got real shit going down tonight. I need you to ride with me." I.T.S. responded: "I'm a rider, bro. I told you from day one I'm about it." Price texted, "Remember that convo we had a while back?" I.T.S. replied, "I can't wait to find out. Like I'm pumped up for it, no backing out whatever it is." Price then stated: "PPL will be dropping tonight." I.T.S. responded, "I'm ready and my sis ain't in bed yet, bro. Just be patient. I promise we will get it done tonight. The later the better, bro. This ain't my first rodeo."[1] Subsequent texts concerned I.T.S.'s sneaking out of his house. Soon thereafter, I.T.S. rode in Price's vehicle with Price and co-defendant Justin Stevenson to Gardner's home. I.T.S. maintained that he thought these texts were about their plan to buy drugs. He claimed that he believed that the phrase "PPL will be dropping tonight" was in reference to dropping acid.

I.T.S. was friends with Gardner and could facilitate the transaction; Gardner did not know the co-defendants. Once inside, Gardner went upstairs

_____

[1] At the time of the incident, I.T.S. was living in the care of his adult sister and her husband.

- 2 -

to retrieve the drugs. When he came back downstairs, co-defendant Stevenson struck Gardner with a metal pipe (later discovered to be a "breaker bar"). This violent act caused I.T.S. to flee; he went outside where he made contact with a neighbor. I.T.S. originally stated that he walked back home, but he later confessed to waiting for the co-defendants in the car parked across the street. A few minutes later, the co-defendants left the residence with a lockbox. The defendants drove to a residence on Pellas Road. State police conducted a search of the Pellas house where they found evidence of the crime. An autopsy of the victims indicated that they bled to death after being struck by the breaker bar in the back of their heads.

I.T.S. was charged with two counts of criminal homicide and one count of criminal conspiracy to commit robbery – inflict serious bodily injury.[2] He petitioned the court for decertification, seeking a transfer from criminal court to juvenile court.

I.T.S. was nearly 18 years old at the time of the decertification hearing. That hearing was held before the trial court on August 16, 2017. I.T.S. presented four witnesses: Psychologist Dr. Joseph Roberts; I.T.S.'s football coach Robert Packer; co-worker Brian Schuller; and sister Hailee Beiler. The Commonwealth presented two witnesses: Psychiatrist Dr. Neil Blumberg; and Pennsylvania Department of Corrections' counselor Amy Mottin.

_____

[2] 18 Pa.C.S.A. §§ 2501(a) and 3701(a)(1)(i), respectively.

In granting I.T.S.'s petition, the decertification court made the following factual findings:

> At the time of the incident, [I.T.S.] had an active drug addiction issue. His substance abuse began at age 16. [I.T.S.] regularly abused marijuana, and experimented with other drugs, including LSD, cocaine, Xanax, MDMA, Klonopin, and Percocet. [I.T.S.] has never received drug and alcohol treatment. Except for the charging of the current offenses, [I.T.S.] has no juvenile or criminal record. As such, he has never received treatment, supervision, and rehabilitation available as dispositional alternatives under the Juvenile Act. [I.T.S.] has a history of school misconducts, however, [he] does not have a history of violent behaviors.
>
> ***
>
> The Court finds the testimony of [the Commonwealth's expert witness] Neil Blumberg, M.D., LLC, to be credible with regard to the existence of mental disorders, including the existence of "Other Specified Personality Disorder with Borderline, Narcissistic and Antisocial Features," and that "there is little likelihood of a significant change in his personality structure in less than three years." However, the Court is unable to determine the causal connection between this personality disorder and [I.T.S.'s] criminal behavior and/or risk of reoffending (as compared to the other six mental disorders found by Dr. Blumberg). This is especially true given the court's finding with regard to [I.T.S.'s] level of culpability. Therefore, the Court will give this finding the appropriate weight.
>
> Given the findings above, [I.T.S.] is "amenable to treatment, supervision or rehabilitation as a juvenile."

*See* Trial Court's Order, 8/30/17, at 2-4 (citation omitted).

The Commonwealth now presents us this timely appeal.[3]  Specifically, the Commonwealth asks us to determine:

> I.    Whether the Decertification court erred in law and/or committed a gross abuse of discretion in granting I.T.S.'s Petition to Transfer the Case from Criminal Proceedings to Juvenile Court Pursuant to 42 Pa.C.S.A. §6322 where I.T.S. failed to establish by a preponderance of the evidence that transferring his case to the juvenile division would serve the public interest.

Commonwealth's Brief at 4.

The Commonwealth argues the trial court erred in determining that I.T.S. met his burden at the hearing to warrant a transfer from criminal division to juvenile court.  Specifically, the Commonwealth points to the trial court's apparent acceptance of Dr. Blumberg's conclusion that I.T.S. had little chance of remedying his mental disorders by the time the child turned 21.  Conversely, the Commonwealth challenged the conclusion of defense expert, Dr. Roberts, who surmised that I.T.S.'s issues were extensions from an underlying drug addiction.  Dr. Roberts testified that the addiction could be remedied prior to the expiration of the juvenile court's jurisdiction. For the reasons that follow, we do not disturb the trial court's determination that decertification is appropriate.

---

[3] The Commonwealth has certified that the trial court's order will terminate or substantially handicap the prosecution.  *See* Pa.R.A.P. 311(d).  Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

Our standard of review is well settled:

> Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will.

*Commonwealth v. L.P.*, 137 A.3d 629, 635 (Pa. Super. 2016) (citing *Commonwealth v. Ruffin*, 10 A.3d 336, 338 (Pa. Super. 2010)). Pursuant to 42 Pa.C.S.A. § 6322(a) and § 6355(e), when a juvenile has been charged with murder or a crime listed under paragraph 2(ii) or (iii) of the definition of "delinquent act" in 42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. *Id.* Like murder, criminal conspiracy to commit robbery – inflict serious bodily injury is also an offense that requires jurisdiction to vest in the criminal division. 42 Pa.C.S.A. § 6302. However, when jurisdiction vests with the criminal division under Section 6302, the juvenile may seek a transfer to the juvenile system through the process of decertification. *Id.* (*citing Ruffin,* 10 A.3d at 338.) "In determining whether to transfer a case charging murder or any offense excluded from the definition of 'delinquent act' in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." 42 Pa.C.S.A. § 6322(a). To assess whether a transfer will serve the public interest, the court considers the factors in Section 6355(a)(4)(iii). *Id.*

Section 6355(a)(4)(iii) provides as follows.

(iii) ... In determining whether the public interest can be served, the court shall consider the following factors:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

This Court has further provided that:

> Although the Juvenile Act requires that a decertification court consider all of the amenability factors, it is silent as to the weight that should be assessed to each factor. The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of the decertification court. A decertification court must consider all the factors set forth in § 6355 of the Juvenile Act, but it need not address, *seriatim,* the applicability and importance of each factor and fact in reaching its final determination.

*L.P.,* 137 A.3d at 635-36 (*citing **Ruffin**,* 10 A.3d at 339) (some citations omitted).

In the present matter, largely undisputed are those facts pertaining to Section 6355(a)(4)(iii)(A)–(F), which take into consideration matters other than the juvenile's amenability to treatment.  The decertification court found that the crime, which resulted in two deaths, to be of the gravest impact on the victims and the community. **See** Trial Court's Order, 8/30/17, at 1-2.  The court found that although I.T.S. facilitated the meeting between the co-defendants and the victim, I.T.S. fled at the first moment of violence.  As such, he is not culpable for the infliction of physical harm that caused the victims' deaths.[4]  *Id.*  The court noted that I.T.S. had no previous criminal or juvenile record.  *Id.* The court heard testimony that I.T.S. could receive treatment and be housed with age appropriate peers in either the adult or the juvenile system.

The crux of the decertification decision – and thus the crux of this appeal – hinges on the amenability analysis of Section 6355(a)(4)(iii)(G)(I) – (IX).

---

[4] The decertification court was careful not to comment on whether I.T.S. might be "legally culpable" for the death.

- 8 -

Notably, within these subsections, still more facts are uncontested. I.T.S. was 17 years, 218 days old at the time of the incident. He had no prior criminal record. The court found that I.T.S. possessed at least average intelligence and is average to above-average in maturity. He possessed the criminal sophistication to buy and use illicit drugs.

The main issue for the trial court concerned Section 6355(a)(4)(iii)(G)(VII): whether I.T.S. could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, i.e. before he turns 21 years old. At the date of the decertification order, the juvenile court's jurisdiction would last approximately 2 years and 205 days, pursuant to the Juvenile Act, 42 Pa.C.S.A. §6301, et seq.

The amenability question can only be answered by first determining what treatment I.T.S. needs. The experts provided differing opinions on this issue. Dr. Blumberg, the Commonwealth's expert, testified that I.T.S. possessed maladaptive traits that led to the impairment of social functioning. *See* N.T., 8/16/17, at 79. He explained that these interpersonal difficulties led to the child's use of drugs, rebellion toward authority, impulsive behavior, lying and cheating in school. *Id.* Dr. Blumberg concluded that this antisocial behavior caused him to make a diagnosis of a personality disorder. *Id.* at 80. Critically, Dr. Blumberg testified that I.T.S. could not be successfully treated for a personality disorder within the requisite time, and that assumes the personality disorder can be successfully treated at all. *Id.* at 87.

On the other hand, I.T.S.'s expert, Dr. Roberts, believed that I.T.S. could be successfully treated within the statutory period. Although Dr. Blumberg argued that I.T.S. antisocial traits led to, or at least included, his criminal drug behavior, Dr. Roberts concluded that the antisocial traits are the *results* of I.T.S.'s drug abuse. *Id.* at 17-18. For Dr. Roberts, I.T.S.'s use of drugs from a relatively early age was another reason why he disagreed with Dr. Blumberg's diagnosis of a hard-to-treat personality disorder. *Id.* at 18. Dr. Roberts testified that because I.T.S. does not have a history of violence, aggression or even a temper, Dr. Roberts was left to believe that I.T.S.'s antisocial traits – e.g., disobeying his curfew, slacking off in school – can be framed as an outgrowth from the underlying substance abuse issue. *Id.* at 19; 126. Dr. Roberts testified further that juveniles with substance abuse issues have a good success rates when the juvenile shows motivation to improve. *Id.* In his opinion, I.T.S. possesses the requisite motivation to change. *Id.*

Likewise, the experts also opined on I.T.S.'s level of capability and risk to the community. Dr. Roberts testified that I.T.S.'s fleeing at the first sign of violence spoke to his capability – or lack thereof – to cause harm to others or the community. *Id.* at 25. Even Dr. Blumberg acknowledged that the determination of whether I.T.S. is amenable to treatment necessarily depends on which set of facts the court believes. *Id.* at 86. He explained that if the court believed that I.T.S. was an unwitting participant to the murders, then perhaps the juvenile system would be the reasonable forum. However, if the

court believed I.T.S. was much more involved in the crime, and knew it might involve violence, then he would present a more pathological disorder, the treatment of which would not be successful in the juvenile system. *Id.* at 83; 86.

The answers to these questions are squarely in the purview of the fact-finder. Moreover, once the facts are found, it is up to the trial decertification court to assign them weight. *L.P.*, *supra*. Indeed, the trial court concluded that I.T.S.'s antisocial traits were indicative of a borderline personality disorder, which suggests that I.T.S. would be unlikely to change in less than three years. *See* Trial Court's Order, 8/30/17, at 3. However, the court was not persuaded that I.T.S.'s personality disorder led to any past or present criminal behavior. In fact, as the court noted, I.T.S. had no prior criminal record and no history of violence. *Id.* Rather, the court noted I.T.S.'s rather substantial drug abuse which started at a young age and was never treated; led to his involvement in this criminal case. The court further believed that I.T.S. could be treated for his drug abuse within the time frame of the juvenile court's jurisdiction. *Id.* Given these considerations, combined with the court's thorough analysis regarding the other Section 6355 factors, we discern no gross abuse of discretion. We therefore affirm the trial court's order transferring I.T.S.'s case to juvenile court.

Order affirmed.

Judge Lazarus joins this Memorandum.
P.J.E. Stevens files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/25/2018