J-A26027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TREAZURE TONEY | : | |
| | : | |
| Appellant | : | No. 399 WDA 2018 |

Appeal from the Judgment of Sentence February 16, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000591-2017

BEFORE: BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:              **FILED FEBRUARY 15, 2019**

Appellant, Treazure Toney, appeals from the judgment of sentence entered following his conviction of robbery.[1] We affirm.

The trial court summarized the underlying facts of this case as follows:

[Appellant] (who was then 16 years old) and another unidentified person committed an armed robbery on a 14 year-old male on January 9, 2017. [Appellant] contacted the victim to meet him via a Facebook message. While the victim was waiting for [Appellant], [Appellant] and another person arrived. Both [Appellant] and his coconspirator were armed with handguns. [Appellant] stuck a handgun into the right side of the victim and then to the victim's head and went through his pockets and took his belongings. [Appellant] threatened the victim by telling him he would come back and shoot up his house if the victim notified the police. [Appellant] stole $180 and an iPhone. [Appellant] fled the scene after the robbery and police officers were able to track him by following his footprints in the snow. [Appellant] was found hiding on a roof of a shed. He was ordered to come down from the roof. [Appellant] refused to present his hands at the time of

_____

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

the arrest. [Appellant] was forcibly arrested. While back at the police station, in the presence of his mother, [Appellant] unzipped his pants and asked the arresting officer if he had "ever seen a black dick before?" [Appellant] then purposefully urinated on the police station floor.

Trial Court Opinion, 5/18/18, at 1-2.

On January 9, 2017, Appellant was charged with one count each of robbery, possession of a firearm by a minor, terroristic threats, resisting arrest, escape, and loitering and prowling at nighttime.[2] A preliminary hearing was held on January 18, 2017, following which the charge of escape was dismissed and the remaining charges were held for trial. On April 3, 2017, Appellant filed a motion to transfer his case to juvenile court. A decertification hearing was held on July 21, 2017, and the trial court denied relief. Pursuant to a negotiated plea agreement, Appellant pled guilty to robbery on February 16, 2018, and the remaining charges were withdrawn. The same day, the trial court sentenced Appellant to serve a term of incarceration of ten to twenty months, to be followed by three years of probation. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

I. Whether the trial court grossly abused its discretion in denying [Appellant's] request to transfer his case to juvenile court?

---

[2] 18 Pa.C.S. §§ 3701(a)(1)(ii), 6110.1(a), 2706(a)(1), 5104, 5121(a), and 5506, respectively.

J-A26027-18

Appellant's Brief at 6.[3]

In his sole issue, Appellant argues that the the trial court abused its discretion in denying his request to transfer this matter from criminal court to juvenile court. Appellant's Brief at 17-29. Basically, Appellant contends that the trial court erred in refusing to transfer his case in light of the Commonwealth's stipulations to certain facts and the fact that Appellant had neither a prior criminal history nor an opportunity to receive treatment through the juvenile system. *Id*. The three Commonwealth stipulations upon which Appellant premises his argument are that: (1) Alice Applegate, Ph.D., was qualified to testify as an expert;[4] (2) "[Appellant], after reading Dr. Applegate's report, has [met the] burden of amenability to treatment";[5] and (3) that Appellant is amenable to treatment.[6]

"This Court will not overturn a decision to grant or deny decertification absent a gross abuse of discretion." *Commonwealth v. Thomas*, 67 A.3d 838, 843 (Pa. Super. 2013). "An abuse of discretion is not merely an error of

---

[3] "A plea of guilty constitutes a waiver of all nonjurisdictional defects and defenses." *Commonwealth v. Jones*, 929 A.2d 205, 212 (Pa. 2007) (internal quotation marks and citation omitted). Denial of a decertification motion, however, presents a jurisdictional issue. *Commonwealth v. Johnson*, 669 A.2d 315, 320 (Pa. 1995).

[4] Dr. Applegate conducted a psychological evaluation of Appellant. N.T. 7/21/17, at 6-7.

[5] N.T., 7/21/17, at 5.

[6] N.T., 7/21/17, at 19.

- 3 -

judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *J.P.D. v. W.E.D.*, 114 A.3d 887, 889 (Pa. Super. 2015) (internal alteration and citation omitted).

> The Juvenile Act, 42 Pa.C.S.A. § 6301 et seq., is designed to effectuate the protection of the public by providing children who commit "delinquent acts" with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community. 42 Pa.C.S.A. § 6301(b)(2). The Juvenile Act defines a "child" as a person who is under eighteen years of age. 42 Pa.C.S.A. § 6302. Typically, most crimes involving juveniles are tried in the juvenile court of the Court of Common Pleas.

> Our legislature, however, has deemed some crimes so heinous that they are excluded from the definition of 'a delinquent act.' Pursuant to 42 Pa.C.S.A. § 6322(a) and § 6355(e), when a juvenile is charged with a crime, including murder or any of the other offenses excluded from the definition of 'delinquent act' in 42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. *See* 42 Pa.C.S.A. § 6302.

> When a case involving a juvenile goes directly to the criminal division, the juvenile can request treatment within the juvenile system through a transfer process called 'decertification.'

*Thomas*, 67 A.3d at 841-842 (quoting *Commonwealth v. Brown*, 26 A.3d 485 (Pa. Super.2011)).

In this case, Appellant was charged properly as an adult because robbery is excluded from the definition of a "delinquent act" when committed by an individual at least fifteen years of age who possesses a deadly weapon.

- 4 -

42 Pa.C.S. § 6302(2)(ii)(D). The decertification statute provides the following:

> In determining whether to transfer a case . . . the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii).

42 Pa.C.S. § 6322(a).

Section 6355(a)(4)(iii) mandates that the decertification court consider the following factors when making a decertification decision:

> (A) the impact of the offense on the victim or victims;
>
> (B) the impact of the offense on the community;
>
> (C) the threat to the safety of the public or any individual posed by the child;
>
> (D) the nature and circumstances of the offense allegedly committed by the child;
>
> (E) the degree of the child's culpability;
>
> (F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and
>
> (G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:
>
>> (I) age;
>>
>> (II) mental capacity;
>>
>> (III) maturity;
>>
>> (IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any; [and]

(IX) any other relevant factors[.]

42 Pa.C.S. § 6355(a)(4)(iii).

"While the Juvenile Act requires that a decertification court consider all of these factors, it is silent as to the weight assessed to each by the court." *Brown*, 26 A.3d at 492 (citation omitted). Thus, a decertification court is free to weigh the factors as it deems appropriate. *Commonwealth v. Sanders*, 814 A.2d 1248, 1251 (Pa. Super. 2003) (citation omitted). Furthermore, although the decertification "court must consider all the fact[ors] set forth in [Section] 6355 of the Juvenile Act, . . . it need not address, *seriatim*, the applicability and importance of each factor and fact in reaching its final determination." *Commonwealth v. Ruffin*, 10 A.3d 336, 339 (Pa. Super. 2010) (citation omitted).

At the conclusion of the decertification hearing, the trial court offered the following statement to support its decision to deny decertification, which reflected its understanding and consideration of the relevant statutory factors:

> One of the disturbing parts of the facts of the events, and I believe some of this was brought up on cross-examination by

defense counsel at the preliminary hearing, is that it appears that this was a setup, appears it was prearranged, that [Appellant] knew the victim and they had talked about connecting somewhere. It did appear the victim discussed that, it was a little vague in the preliminary hearing, but he clearly agreed that they were on the phone and they were intending to meet. So this, to me, demonstrates a substantial degree of criminal sophistication. It's not a chance encounter. This was a planned event one could reasonably infer.

[The prosecutor] is commenting on the – I don't know if its a recent trend, but seems like a recent trend where we have drug deals go awry, and in many instances they are planned to go awry by the person with the gun. That reflects on the dangerousness to the community.

I don't think [the prosecutor] is arguing the other cases where people got shot or killed. We've had cases in this room over marijuana, to argue that it is something that our community is seeing more of. And so as a general matter, it does reflect poorly on [Appellant] with regard to the aspect of dangerousness to the community.

The records of [Appellant] that are outlined and given to the [c]ourt by the Commonwealth and Dr. Applegate also talks about a lot of his interactions with the school districts where he was shows that [Appellant] seems to be very defiant, disrespecting authority, and really is not very responsive in a positive way through many, many efforts to try to correct his behavior.

Even Dr. Applegate, in her discussion of [Appellant's] case, indicates that there's some contraindication to amenability to treatment, Page 34, at the bottom of that page. I accepted [that] Dr. Applegate concludes that [Appellant] is amenable to treatment, but there is some caution to be taken with regard to that conclusion. The dangerousness of the conduct, however, is really substantial in this case. For all practical purposes, [Appellant] is 17 years old. He does seem to have gotten into legal problems quickly. He doesn't have a substantial juvenile record. But the nature of the conduct, [Appellant's] history of being disrespectful and uncooperative with authorities in settings where other juveniles are around him, school in particular, suggests to the [c]ourt that this is not an appropriate case to send across the street. This petition is denied.

N.T., 7/21/17, at 21-23.

In addition, as is reflected in the following analysis in its written opinion, the decertification court carefully considered the statutory factors and determined that Appellant failed to prove that transfer to juvenile court was appropriate:

> During the transfer hearing, the report and testimony of psychologist, Alice Applegate, was presented by [Appellant]. Dr. Applegate concluded that [Appellant] is amenable to treatment in the juvenile justice system. This [c]ourt considered all of the evidence offered at the transfer hearing, including the report and testimony of Dr. Applegate. This [c]ourt's decision not to transfer [Appellant's] case to juvenile court was based on the serious impact of the armed robbery on the victim; the impact of the offense on the community; the serious threat to the safety of the public or any individual posed by [Appellant]; the nature and circumstances of the offense allegedly committed by [Appellant] and the degree of [Appellant's] culpability. While there was evidence presented that [Appellant] was amenable to treatment in the juvenile system, this [c]ourt believes that the factors cited above outweighed the evidence of amenability to treatment.
>
> There is no question that the circumstances of the instant offense were serious. Its impact on the victim and the community cannot be overstated. In this [c]ourt's view, [Appellant] contacted the victim to meet him. As this [c]ourt noted during the hearing, the meeting was actually a set-up. [Appellant] pulled a gun, held it to the victim's head and forcibly robbed the victim of money and a cell phone. [Appellant] then threatened the victim and his family with physical harm if the victim contacted the police. This [c]ourt views this offense as gravely serious and [Appellant] played the central role in the robbery.
>
> In addition to the circumstances of the offense of conviction, this [c]purt also considered [Appellant's] history of being uncooperative, defiant and disrespectful to authorities in settings where other juveniles are present (at school). Although Dr. Applegate opined that [Appellant] is amenable to treatment in the juvenile justice system, Dr. Applegate's report contained 13 pages of notations concerning [Appellant's] defiant conduct

- 8 -

toward authorities when he was in school. [Appellant] persistently engaged in fighting behavior with male and female students and he was constantly disruptive in class. The behavior continued between ages 5 and 16. On December 14, 2016, at age 16, [Appellant] was found in possession of marijuana at Carrick High School.

This [c]ourt also considered [Appellant's] absolute disregard for the authority of police officers. In addition to the incident at the police station in which [Appellant] urinated on the floor of the police station, [Appellant] also had prior interactions with the law that demonstrated his lack of respect for authority. On November 12, 2016, [Appellant] stole a vehicle and led police on a chase that resulted in [Appellant's] fleeing the police at a speed of approximately 75 miles per hour. [Appellant] lost control of the vehicle and wrecked the vehicle.

This [c]ourt also considered that, at the time of the decertification hearing, [Appellant] was four days shy of his 17th birthday.

Moreover, the threat to the safety of the individual who was robbed in this case, in particular, and the public in general, was not inconsequential. The robbery in this case was pre-planned and [Appellant] used social media to lure the victim to the location of the robbery, thereby demonstrating substantial criminal sophistication. Though [Appellant] does not have a lengthy criminal record, it appears as though his criminal conduct has escalated in the year surrounding the offense of conviction. The record demonstrates that [Appellant] is a threat to the community.

Considering all of the relevant factors, this [c]ourt believes that the public interest would not be served by transferring this case to juvenile court. Accordingly, the judgment of the [c]ourt should be affirmed.

Trial Court Opinion, 5/18/18, at 3-6 (footnote omitted).

The General Assembly has determined that individuals at least fifteen years of age, who possess a deadly weapon and commit robbery, should most often be tried as an adult. Instantly, the decertification court found that

Appellant failed to show that transfer to juvenile court would be in the public's interest. The record reflects that the decertification court properly considered the statutory factors, including that an expert opined Appellant was amenable to treatment as a juvenile, when reaching this decision and it is supported by ample evidence. The weight to be assessed to each of the statutory factors is reserved for the decertification court's discretion. **Brown**, 26 A.3d at 492. Accordingly, we conclude that the decertification court did not abuse its discretion in denying Appellant's decertification motion requesting transfer of this case to juvenile court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2019