J-S44043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.B. | : | No. 1812 EDA 2023 |

Appeal from the Order Entered June 7, 2023
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002241-2022

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:         **FILED SEPTEMBER 17, 2024**

The Commonwealth of Pennsylvania appeals from the order entered on June 7, 2023, granting Appellee's, S.B.'s, motion for decertification and transferring this case to juvenile court. For the reasons that follow, we affirm.

S.B. was born in June 2005. It is undisputed that he suffers with behavioral and significant mental health issues that require counseling and educational and vocational programming. **See** Commonwealth's Brief at 14-16. Relevant to this matter, it is alleged that on August 31, 2022, he stabbed his grandmother multiple times in the chest and neck with a kitchen knife. When police arrived at the scene, S.B. was arrested.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In a criminal information filed on November 10, 2022, the Commonwealth charged S.B. with attempted criminal homicide, 18 Pa.C.S. § 901(A); aggravated assault, 18 Pa.C.S. § 2702(A)(1); aggravated assault - deadly weapon, 18 Pa.C.S. § 2702(A)(4); possessing an instrument of crime, 18 Pa.C.S. § 907(A); simple assault, 18 Pa.C.S. § 2701(A)(1); and recklessly endangering another person, 18 Pa.C.S. § 2705.  Although S.B. was seventeen years old at the time of the alleged offenses, due to the nature of the crimes charged, the Commonwealth proceeded to prosecute him in adult criminal court where jurisdiction is presumptively proper.

On December 6, 2022, S.B. filed a motion to decertify his case and transfer jurisdiction to juvenile court.  The decertification court held hearings on April 3, 2023, and May 18, 2023.  On June 7, 2023, the court entered an order granting decertification to juvenile court.

On June 8, 2023, S.B. filed a motion to modify the decertification order, asking the court to include findings of fact and conclusions of law with its disposition.  On June 9, 2023, the Commonwealth filed an emergency petition for reconsideration of the June 7, 2023 order.  The decertification court held a hearing on June 13, 2023, and at the conclusion denied the Commonwealth's motion for reconsideration.  In addition, the decertification court placed on the record its findings of fact in support of its June 7, 2023 order.  This timely appeal by the Commonwealth followed.  Both the Commonwealth and the decertification court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issues for our review:

Whether the court abused its discretion and failed to carefully consider the entire record in granting decertification when it [ignored] both expert witnesses testimony [indicating] Appellee was at high risk of re-offending due to: the violent nature of him stabbing his grandmother multiple times in her chest and neck area with a large kitchen knife; his long history of violent behavior and continued assaults on corrections officers while pending decertification; being nearly eighteen years old with a need for long-term mental health treatment; and being removed from a secured juvenile facility for assaultive behavior within 48 hours of decertification, requiring a 302 involuntary commitment to a hospital?

Whether the decertification court erred as a matter of law in failing to adequately make findings of fact in support of the decertification/transfer order?

Commonwealth's Brief at 6 (full capitalization and suggested answers omitted).

In its two issues, which we address together, the Commonwealth argues that the decertification court did not properly consider the entire record in determining that S.B. is amenable to treatment in juvenile court and that decertification best serves the public interest. The Commonwealth asserts that the court ignored expert testimony reflecting that S.B. was at risk of reoffending and the record does not establish that he met the appropriate standard for decertification. The Commonwealth further contends that the court did not make adequate findings of fact and conclusions of law to support the decertification ruling.

"This Court will not overturn a decision to grant or deny decertification absent a gross abuse of discretion." *Commonwealth v. Thomas*, 67 A.3d

838, 843 (Pa. Super. 2013) (citation omitted). "An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will." *Commonwealth v. Sanders*, 814 A.2d 1248, 1250 (Pa. Super. 2003) (citation omitted).

> The Juvenile Act, 42 Pa.C.S.A. § 6301 et seq., is designed to effectuate the protection of the public by providing children who commit "delinquent acts" with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community. 42 Pa.C.S.A. § 6301(b)(2). The Juvenile Act defines a "child" as a person who is under eighteen years of age. 42 Pa.C.S.A. § 6302. Typically, most crimes involving juveniles are tried in the juvenile court of the Court of Common Pleas.
>
> Our legislature, however, has deemed some crimes so heinous that they are excluded from the definition of 'a delinquent act.' Pursuant to 42 Pa.C.S.A. § 6322(a) and § 6355(e), when a juvenile is charged with a crime, including murder or any of the other offenses excluded from the definition of 'delinquent act' in 42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. *See* 42 Pa.C.S.A. § 6302.
>
> When a case involving a juvenile goes directly to the criminal division, the juvenile can request treatment within the juvenile system through a transfer process called 'decertification.'

*Thomas*, 67 A.3d at 841-42 (quoting *Commonwealth v. Brown*, 26 A.3d 485 (Pa. Super.2011)).

"[W]hen a juvenile seeks to have his case transferred from the criminal division to the juvenile division, he must show that he is in need of and amenable to treatment, supervision or rehabilitation in the juvenile system." *Brown*, 26 A.3d at 492 (citation omitted). "If the evidence presented fails to

- 4 -

establish that the youth would benefit from the special features and programs of the juvenile system and there is no special reason for sparing the youth from adult prosecution, the petition must be denied and jurisdiction remains with the criminal division." *Id*. at 492-93 (citation omitted).

The decertification statute provides the following:

In determining whether to transfer a case . . . the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii).

42 Pa.C.S. § 6322(a). In addition, we are mindful that "[a] preponderance of the evidence is tantamount to a 'more likely than not' standard." *Commonwealth v. Esquilin*, 880 A.2d 523, 529 (Pa. 2005) (citation omitted).

Section 6355(a)(4)(iii) directs the following factors to be considered by the decertification court when making its decision:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any; [and]

(IX) any other relevant factors[.]

42 Pa.C.S. § 6355(a)(4)(iii).

"While the Juvenile Act requires that a decertification court consider all of these factors, it is silent as to the weight assessed to each by the court." *Brown*, 26 A.3d at 492 (citation omitted). Consequently, a decertification court is free to weigh the factors as it deems appropriate. *See Sanders*, 814 A.2d 1248, 1251 (Pa. Super. 2003). Furthermore, although the decertification "court must consider all the fact[ors] set forth in [section] 6355 of the Juvenile Act, ... it need not address, *seriatim*, the applicability and importance of each

factor and fact in reaching its final determination." ***Commonwealth v. Ruffin***, 10 A.3d 336, 339 (Pa. Super. 2010) (citation omitted)

At the culmination of its hearing on June 13, 2023, the decertification court offered the following extensive statement to support its decision to grant decertification, which reflected a complete understanding and consideration of all the statutory factors:

> So I'm going to go through the different factors that are set forth in the statute for decertification. And the first is the impact of the offense on the victim or victims. To be clear and as I said a moment ago, I believe my decision is the right decision under the facts and the law. It does not mean that I am right and it does not minimize the terrible things that happened that led to the charges being filed in this case.
>
> [S.B.'s] actions are horrific and the injury that was caused to his grandmother is horrific. You cannot slice it any other way. But, I think the impact of the offense on the victim I think it actually factors, as strange as this may sound to you, decertification. I did not hear of any long-lasting trauma. The victim strongly wants decertification. And she explained that in a rational and appropriate manner. She believes as I said a moment ago, that it is mental health coupled with learning difficulties and IQ issues. But, I think giving voice to her desire for decertification may actually serve to lessen any emotional trauma to her as a result of this. So for those reasons, I think that the impact may in fact favor decertification.
>
> The impact of the offense on the community is the next factor. Again, I am not minimizing his actions or what happened here. But, I do not find [S.B.] to be criminally sophisticated. His responses in the different interviews and so forth he's not favoring criminality, and he's not looking for a life of crime. He wants to finish school. He has goals. There may be a competency issue at this point that treatment is necessary. But, again, what I'm looking at are the reports and the testimony of the experts and the individuals who testified that's what I find. He has expressed a willingness for help. There were repeated references for wanting help with his memory. And again, as I said a moment ago when

he receives the services he needs he does well. And I look at the information about how he did a Global Collaborative Initiative. And I don't know how much this really impacts my finding in this regard. But, he comes from a family where there is a history of schizophrenia. And I'll tell you in a few moments in more detail.

But, I am inclined to believe and accept the opinions and recommendations of Doctor Brogan over Doctor [Stephen Mechanick]. And I'll talk about that and why. But, something that I think gives me hope is that his brother has received a diagnosis and is being appropriately treated. And is doing well in the community. Now, that's not a guarantee for [S.B.], .... But, I think it is possible that the same thing could happen with [S.B.].

The effect on the safety of the public or any individual posed by the child. I think this is a neutral factor. Again, I don't want to minimize what happened here. The threat is real if [S.B.] does not receive the treatment that he needs. And I'm talking treatment both from a mental health standpoint as well as educationally. And I recognize that there were people who testified about criminal issues or schooling issues. It's contained in Doctor [Leah] Brogan's report about discipline infractions in school.

... But, again when he receives the services he needs he does well. And I look to the experience he had at GCI. Hopefully, what happened with his brother and the response that his brother has made is also something that can happen to [S.B.]. Recognizing that there is no guarantee. And so I believe that factor is neutral.

The nature and circumstances of the offense allegedly committed by the child. I acknowledge that factor may run against decertification. There was an attempted homicide with a serrated kitchen steak knife or at least that's what the knife appears to be to the [c]ourt based on the exhibit. We don't know what precipitated it. It's hard to say whether that's a pro or a con. So I recognize that that factor to this point may run against decert[ification].

However, … [S.B.] is not criminally sophisticated. … I don't believe that there's any evidence that this was of an evil motive. I think this is based on mental health concerns. And as Ms. Ramos much more eloquently said a few moments ago better than the

[c]ourt is the goal is not to punish mental illness. He needs treatment.

The degree of the child's culpability I believe that this favors decertification for some of the reasons that I've already stated. Again, I don't believe he's criminally sophisticated or possesses an evil motive. I believe it's mental health and/or intellect based. Probably a combination. And so he needs some treatment to help him best function in society. I think all of us in the criminal system have seen people with severe mental illness such as [S.B.]. And when they're untreated they are not able to function.

Additionally, on this with respect to the child's culpability to the best of our understanding, this is not a planned attack. There weren't accomplices. Again, it's not evil motive-based or malice-driven conduct. So again for those reasons, I think it favors decert[ification].

The next factor is the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system. I think we've talked about this. And as I said a moment ago, I accept the opinion of Doctor Leah Brogan over the opinion of Doctor [Mechanick]. I found her opinion more credible. I found her testimony credible. I believed her opinions were based upon information much more specific to this case than Doctor [Mechanick's].

The personal interviews with collateral sources that allowed her to get that gut sense of the support of family members and other information about this as opposed to it just being a paper that you're reviewing. I'd also note that she is a pediatric specialist in this area and Doctor [Mechanick] is not.

She also pointed out some issues with Doctor [Mechanick's] opinion. She had indicated that under best practices, Doctor [Mechanick] did not perform any collateral interviews. His report did not include any screens or clinical tools. And Doctor [Mechanick] opined on [S.B.'s] mental health diagnosis which is a dual road and is ethically unpermitted. That is something she did not do. She never said whether she believed it was schizophrenia. She indicated that she thinks that it's some form of psychosis and that he would need a complete psychiatric evaluation to determine his diagnosis.

\* \* \*

There are facilities in this Commonwealth that provide dispositional alternatives. From the criminal justice system while we may be able to get him to Norristown quickly or quicker than we might to a secured facility as Doctor Brogan had said she's not sure that a secured facility is what [S.B.] truly needs. He needs a mental health evaluation by a psychiatrist first and foremost.

Also, as I said a few moments ago, what happened at Abraxas to the extent that there was a fight or to the extent that there were conflicts out of the jail none of that is surprising as [S.B.'s] needs have not been met. His education while at the Monroe County Correctional Facility, and I will be blunt, is a joke. It is education in name only. You have a child with an IEP who was sat in front of a computer screen with a Correction's Officer in the room. And he is expected to be able to get his education? Look at his IEP. Look at what he needs. That is unacceptable. And it may, in name only, meet the requirements under the law. But, it does not meet his IEP. Not by a long stretch.

… Here we have somebody with a low functioning IQ, serious mental health issues and we think he's going to do well? That's just his education alone. And then what Ms. Ramos is representing, and again I have no reason to doubt what you're saying. The jail wasn't complying with a [c]ourt order. They were giving lip service to it. Hoping to push him out to Norristown when he hits eighteen. That is unacceptable. And again, the statute doesn't say -- I mean the jail didn't even try from what Ms. Ramos is representing. That is unacceptable.

\* \* \*

The next factor is whether the child is amenable to treatment, supervision, or rehabilitation as a juvenile by considering the following factors. Age -- I accept Doctor Brogan's opinion that the time is now. A juvenile brain as she said is not the mini adult brain. I think that favors getting him the help that he needs as quickly as we can. And I think that that has got to be in the juvenile system. I think the mental capacity works against him. He has a slow processing speed and a low IQ. His maturity I'm inclined that slightly favors him. He's not sophisticated. He's not street savvy. He doesn't have a criminal predisposition. So if anything it favors him. It may be more

- 10 -

neutral. But, I did consider it, and that's sort of how I'm piecing that piece into this puzzle.

As I have said many times he's not criminally sophisticated which favors him. He's not sophisticated. He's not street savvy. His previous records, again I think that favors. I recognized how serious these charges are. I recognize that he was probably, and as I, you know indicated he's going to be a tough for our probation office. He would be a very difficult individual for the jail to deal with. But, the prior charges in the jail misconduct show more that he will decompensate without treatment. Because again I always say this when I'm dealing in the criminal realm with defendants, talk is cheap, but if you walk the walk that's really where the evidence is. And when he was getting the treatment that he needed at GCI he was doing well.

So I think his previous records demonstrate the decompensation without treatment and that he is able to do well which I think then favors decertification.

The nature and extent of any prior delinquent history including the success or failure of any previous attempts by the juvenile court to rehabilitate the child. He's never been treated in the juvenile system. And so that does not work against him at all as far as being decertified. Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction when he turns twenty-one he's just about to turn eighteen.

As I said, I accept Doctor Brogan's belief that he is amenable to treatment. But, that it's got to be done now. There are facilities. ...

[A]s Doctor Brogan said there are facilities that do exist, and it's time now that the Commonwealth meets its obligations. We've got to find a way to make it happen.

The next factor is probation or institutional reports. I think I already discussed those. And then any other relevant factors. Again, I'll be blunt about this. There is evidence in the record that although the victim -- I know she's the adoptive mom, but I keep referring to her as the grandmother. So let me just be clear about it. I am talking about the grandmother who is the victim and also the adoptive mother. She is 110% supportive of this child and absolutely loves him or she would not be fighting as hard as she

is right now. But, I believe based on the evidence in the record and that was acknowledged by the aunt, that she perhaps lacks the parenting skills to deal with [S.B.].

There was information in the record that -- you know when she was disciplining [S.B.] and I'm sure it was not easy to have a child with his issues, but she at times and her late paramour resorted to hitting and yelling at [S.B.]. That's certainly not ideal. The aunts have acknowledged this.

I also got the sense that the grandmother was trying to do her best to make sure that she was current with what was going on with [S.B.] at school. But, I didn't see any information in the record that she was being proactive in contacting the school. … I think that [S.B.] is going to require someone like his -- the record indicates his aunts when he was at GCI -- where they were proactive. They were directly contacting the school and they were getting the information from the teachers and the support staff and the school and not [S.B.].

So for those reasons, I think the aunts are potentially an enormous resource for [S.B.] and probably a far more appropriate resource than his grandmother, the victim, the adoptive mom, and so forth. So those are my reasons for the record.

N.T., 6/13/23, at 20-31.

The decertification court found S.B. established that transfer to juvenile court would, more likely than not, be in the public's interest. The record reflects that in reaching its decision, the decertification court properly considered the statutory factors and demonstrated its clear understanding of the expert evidence presented by the parties. The weight to be assigned to each of the statutory factors is reserved for the decertification court's discretion. **Brown**, 26 A.3d at 492. Accordingly, we conclude that the decertification court did not abuse its discretion in granting S.B.'s motion to

- 12 -

transfer this case to juvenile court. Therefore, the Commonwealth's contrary argument lacks merit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/17/2024