J-A17036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| N.T., a minor | : | No. 678 WDA 2024 |

Appeal from the Order Entered June 3, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001678-2023

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: AUGUST 12, 2025**

The Commonwealth of Pennsylvania appeals from the order that transferred jurisdiction of this homicide case to the Juvenile Division of the Allegheny County Court of Common Pleas.  The Commonwealth argues that the court lacked jurisdiction to transfer the case more than 20 days after the hearing on the petition for a transfer.  After careful review, we are compelled to quash this appeal.

While the particular facts of the underlying case are not pertinent to our decision, we note that the juvenile defendant, age 14 at the time of the offense, is charged with criminal homicide.  Following his arrest, on May 12, 2023, the juvenile filed a petition to transfer his case to the Juvenile Division of the court of common pleas.  A hearing on the motion did not occur until many months later, on March 1, 2024, with the court's obtaining testimony from the juvenile's father and two of the victim's relatives on that date.  The

hearing was then re-scheduled, by agreement of the parties, to accommodate the remaining witnesses, including Commonwealth and defense experts, on April 3, 2024.

At the conclusion of the April 3, 2024 hearing, the court asked for electronic copies of all documentation from both parties, including expert reports and transcripts, explaining that it wanted to review all the evidence before making a final decision. N.T., 4/3/24, at 80-81. The trial judge explained that, because of her status as a senior judge, her court schedule was rather limited and she no longer had a permanent office in the courthouse or dedicated support staff; nonetheless, she wanted to announce this decision in open court. *Id.* at 101. The court initially suggested a hearing to announce her decision on April 23, 2024. However, because the Commonwealth's attorney had other trial obligations and could not appear on that date, all parties agreed to appear on April 29, 2024. *Id.* at 102.

In open court on April 29, 2024, the trial court stated that it had decided to transfer the case, but it would not immediately enter an order transferring the matter to the juvenile division. The court explained, "I have to find a place to put him. He can't be released to the community while this matter is pending. I will continue this hearing." N.T., 4/29/24, at 17-18. In the meantime, the juvenile would remain at the county jail while the parties looked for a suitable placement for him pending adjudication. *Id.* at 18. The court appeared to be frustrated by the lack of options for the juvenile's placement:

- 2 -

> I feel like I should not make a decision based upon the availability of a detention bed, but right now I'm not willing to have him - - I continued the hearing, so the hearing is continued, so we haven't finished the hearing yet.

*Id.* at 23.  Thereafter, the court set a hearing date for two weeks later to revisit the matter of an available detention bed for the juvenile.  However, the court then issued an order granting the juvenile's motion to transfer on April 29, 2024, and filed findings of fact on April 30, 2024.

On April 30, 2024, the Commonwealth filed a motion objecting to the transfer to juvenile court, as it had occurred more than 20 days after the hearing, arguing that such action contravened 42 Pa.C.S. § 6322(b) and *Commonwealth v. Green*, 291 A.3d 317 (Pa. 2023).  In this motion, the Commonwealth maintained that the April 29, 2024 order transferring jurisdiction to the juvenile court was a legal nullity.  The court held a hearing to consider the Commonwealth's motion on May 29, 2024, after which it denied the motion by order dated May 29, 2024, and entered on the docket on June 3, 2024.[1]  The Commonwealth filed a notice of appeal from this order on June 7, 2024.  The trial court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal, which the

---

[1] The Commonwealth incorrectly states in its notice of appeal that the order was entered on May 29, 2024, but the docket shows that the order was not entered until June 3, 2024.  We have corrected the caption accordingly.

- 3 -

J-A17036-25

Commonwealth purported to have filed on July 2, 2024.[2]  The trial court issued

its opinion in this matter on August 29, 2024.

On appeal to this Court, the Commonwealth raises one issue:

Whether the order granting the decertification and transferring the case to the Family Division was a nullity because the court lost jurisdiction to act once the 20 days following the close of evidence occurred, pursuant to 42 Pa.C.S.[] § 6322, and … **Green**…, and that jurisdiction lies in the Criminal Division of the Court of Common Pleas?

Commonwealth's Brief at 5.

Before addressing the Commonwealth's issue, we must determine if this

appeal is properly before us.  In **Commonwealth v. Johnson**, 669 A.2d 315

---

[2] No statement of errors is included in the certified record on appeal. According to the Commonwealth's brief, it discovered while writing the brief for this appeal that, despite the Commonwealth's believing its Rule 1925(b) statement had been filed and served on the trial court judge, the Rule 1925(b) statement was not included in the record.  Thus, in an attempt to avoid waiver, the Commonwealth filed a concise statement of matters complained of on appeal *nunc pro tunc* on November 7, 2024, raising the same issue as alleged to have been raised in the earlier statement.  The trial court did not grant permission to file this Rule 1925(b) statement *nunc pro tunc* or address it in any way.  Accordingly, the *nunc pro tunc* filing is a nullity.  Merely designating a motion as being filed "*nunc pro tunc*" is insufficient to preserve it as being filed in a timely manner.  "If the trial court chooses to permit a defendant to file a … motion *nunc pro tunc*, the court must do so expressly." **Commonwealth v. Dreves**, 839 A.2d 1122, 1128 (Pa. Super. 2003); **see also Commonwealth v. Woods**, 9099 A.2d 372 (Pa. Super. 2006) (finding that a supplemental Rule 1925(b) statement which was filed without first seeking, and obtaining, permission to do so from the trial court was a nullity). The November 7, 2024 Rule 1925(b) statement was then added to the certified record in this Court on June 25, 2025.  While the failure to file a timely statement of errors could result in a finding of waiver of the Commonwealth's issue on appeal, **see Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998), we need not decide if waiver on this basis is warranted on these facts.  Instead, as we explain *infra*, the Commonwealth's appeal must be quashed.

- 4 -

(Pa. 1995), our Supreme Court held that an appeal of an order transferring a case from the criminal division to the juvenile division is "immediately appealable as of right[,]" as such orders are "aligned with cases falling under Pennsylvania Rule of Appellate Procedure 311(d)." *Id.* at 323. Rule 311(d) states:

> **(d) Commonwealth Appeals in Criminal Cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d).

Here, however, the Commonwealth did not file an appeal from the April 29, 2024 order granting the juvenile's motion to transfer this case from criminal court to the juvenile division. Instead, the Commonwealth states in its notice of appeal that it is appealing from the court's order ***denying its motion to vacate the court's April 29, 2024 order*** transferring this case to the juvenile court. ***See*** Notice of Appeal, 6/7/24, at unnumbered 1 (stating that this appeal is "from the order entered in this matter on May 29, 2024, refusing to recognize that the order decertifying the case to the Juvenile Division on April 29, 2023 [*sic*], was a nullity"). Problematically, the certification attached to the Commonwealth's notice of appeal states: "The Commonwealth hereby certifies in good faith that the order appealed from, ***granting defendant's pretrial motion to decertify the case from the Criminal Division to the Juvenile Division***, substantially handicaps and/or

- 5 -

effectively terminates prosecution of appellee/defendant on the specified charges." ***Id.*** at unnumbered 27 (emphasis added). The Commonwealth did not certify that the order from which it is appealing — *i.e.*, the order denying its motion to vacate the April 29, 2024 order — substantially handicaps and/or effectively terminates the prosecution of its case.

Given this procedural posture, our Court issued a rule to show cause order, stating as follows:

> The instant appeal appears to be untimely filed. A notice of appeal must be filed within 30 days of the entry of the order being appealed. ***See*** Pa.R.A.P. 903(a); ***Commonwealth v. Moir***, 766 A.2d 1253 (Pa. Super. 2000)[.] This Court may not extend the time for filing a notice of appeal. ***See*** Pa.R.A.P. 105(b). The mere filing of "a motion for reconsideration, unless expressly granted within the thirty-day appeal period, does not toll the time period for taking an appeal from a final, appealable order." ***Gardner v. Consolidated Rail Corp.***, 100 A.3d 280, 283 (Pa. Super. 2014) (citation omitted).
>
> Accordingly, the Commonwealth is **DIRECTED** to show cause, in a response filed of record in this Court, within ten (10) days of the date that this Order is filed, why the above-captioned appeal should not be quashed as untimely filed on June 7, 2024.

Rule to Show Cause Order, 8/8/24, at unnumbered 1 (emphasis in original).

On August 12, 2024, the Commonwealth filed a response, stating, in pertinent part:

> [T]he Commonwealth included in its Notice of Appeal its certification that it was substantially handicapped in continuing to prosecute the case because of the trial court's order decertifying the case to the Juvenile Division. While the certification does refer to the original decertification order and not the subsequent order denying the Commonwealth's objection to the decertification, the Commonwealth submits that this should not be deemed a fatal defect as the effect of the two is the same, the trial court continues

- 6 -

to prevent the transfer of the case to the Criminal Division despite having lost jurisdiction to grant decertification and try the case in the Juvenile Division, and the Supreme Court has already recognized the Commonwealth's right to an interlocutory appeal in such situations pursuant to Pa.R.A.P. 311(d). *See* … *Johnson*, … 669 A.2d [at] 323….

Commonwealth's Answer to Rule to Show Cause, 8/12/24, at unnumbered 5. This Court subsequently issued an order deferring the issue of the timeliness of the Commonwealth's appeal to the merits panel.

We now conclude that the Commonwealth's appeal must be quashed. To the extent the Commonwealth states that it is appealing from the June 3, 2024 order denying its objection to the decertification, that order is not final, as it neither disposes of all claims and all parties, nor meets any other definition of a final order set forth in Pennsylvania Rule of Appellate Procedure 341. Moreover, the Commonwealth did not certify in the notice of appeal that the July 3, 2024 interlocutory order will terminate or substantially handicap its prosecution of the juvenile defendant. *See* Pa.R.A.P. 311(d).

Although the Commonwealth did certify, in its notice of appeal, that the order *granting decertification* terminates or substantially handicaps its prosecution of the juvenile defendant, such certification is irrelevant because the Commonwealth did not appeal from the court's April 29, 2024 order granting decertification. Moreover, even if we construed this appeal as stemming from the decertification order, the Commonwealth filed its notice of appeal more than 30 days after that order was entered. Specifically, the Commonwealth's notice of appeal from the April 29, 2024 order was due on or before May 29, 2024, yet it was not filed until June 7, 2024.

Given these procedural circumstances, we are compelled to conclude that the Commonwealth's appeal must be quashed as either an improper appeal from an interlocutory order, or an untimely appeal from the order granting decertification. Moreover, for the reasons that follow, had we reached the merits of the Commonwealth's appeal, we would conclude that no relief is due. This determination is explained in more detail below.

Briefly, we note that the decision regarding whether to grant decertification "will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will." *Commonwealth v. Ruffin*, 10 A.3d 336, 338 (Pa. Super. 2010) (internal citations omitted). Moreover, where the claim on appeal constitutes a pure question of law — such as issues of statutory interpretation — our scope of review is plenary and our standard of review is *de novo. Commonwealth v. Moore*, 103 A.3d 1240, 1244 (Pa. 2014).

Here, the juvenile was charged with homicide, and alleged to have been age 14 when the homicide occurred. A juvenile charged with murder may seek to be transferred from criminal proceedings to the juvenile court system. Our Juvenile Act provides, in pertinent part:

> **(a) General rule.--**If it appears to the court in a criminal proceeding charging murder … that the defendant is a child, the case may … be transferred and the provisions of this chapter applied. In determining whether to transfer a case charging murder…, the child shall be required to establish by a

preponderance of the evidence that the transfer will serve the public interest[.]

**(b) Order.--**If the court finds that the child has met the burden under subsection (a), the court shall make findings of fact, including specific references to the evidence, and conclusions of law in support of the transfer order. **If the court does not make its finding within 20 days of the hearing on the petition to transfer the case, the defendant's petition to transfer the case shall be denied by operation of law.**

42 Pa.C.S. § 6322 (emphasis added). The Rules of Criminal Procedure also mandate that a court has 20 days for a decision on a motion requesting a transfer to juvenile court, as follows:

(C) At the conclusion of the hearing, but in no case longer than 20 days after the conclusion of the hearing, the judge shall announce the decision in open court. The judge shall enter an order granting or denying the motion for transfer, and set forth in writing or orally on the record the findings of fact and conclusions of law.

(D) If the judge does not render a decision within 20 days of the conclusion of the hearing, the motion for transfer shall be denied by operation of law. The clerk of courts immediately shall enter an order on behalf of the judge.

Pa.R.Crim.P. 597(C), (D).

The leading case on the 20-day-deadline issue is **Green**. There, Damian Green, a juvenile, was charged along with three other juveniles with homicide, robbery, and other offenses. **Green**, 291 A.3d at 320. Although the Commonwealth wished to try the cases together, each defendant filed a motion to transfer his case to the juvenile court. **Id.** The trial court appointed experts and scheduled separate decertification hearings for each juvenile. **Id.** Green's decertification hearing concluded on January 19, 2021, and, at the

conclusion of his hearing, the court observed on the record that it had 20 days to issue an order and opinion on the matter. *Id.*

Regardless of its acknowledgement of the 20-day deadline, the court issued its order granting the transfer of Green's case 49 days after the hearing. *Id.* Notably, the clerk of courts had not yet issued an order denying Green's motion to transfer by operation of law pursuant to Rule 597. *Id.* at 320-22. The court sealed the opinion in support of its decision to transfer Green's case pending the resolution of the decertification petitions for the other three juvenile defendants. *Id.* at 321. The court explained that it had requested that Green and the Commonwealth agree to waive the 20-day limit for making a decision:

> [The court's] recent request to the parties for waiver was in regard to the time frame to publicly issue a written opinion with its order, because the issuance of said opinion could influence ongoing testimony in the joined co-defendant[s'] petition[s] for decertification. The Commonwealth['s] having indicated to the trial court its opposition to waiver, and [Green's] having consented to waiver, the trial court memorializes its previous decision and findings in [an] order … here, and will issue an opinion under seal, which will be released at the conclusion of the hearing for the co-defendant[s].

*Id.* at 320 (cleaned up).

The Commonwealth appealed, arguing that the transfer petition had been automatically denied by operation of law when the statutorily mandated 20-day time frame provided by Section 6322 of the Juvenile Act and Rule 597 had expired. In response to the appeal, the trial court explained that it had been faced with a "true dilemma" because, while it was obligated to issue a

ruling within 20 days, it was also "guided by its duty to operate in the interests of justice." *Id.* at 321. The court maintained that it was "caught between competing duties" and "could find no authority to guide it." *Id.* The trial court stressed that it had to consider the impact of its ruling on each of the four juvenile defendants; because the Commonwealth had used the same expert in all four cases, and since the court's opinion referred extensively to the opinion provided by the Commonwealth's expert who had examined all four juveniles in connection with the decertification petitions, the court did not wish to influence the testimony in the other cases. *Id.*

In a published decision, this Court outlined the procedure required when addressing a motion to transfer jurisdiction, stressed the requirement contained in Section 6322(b) that a decision be rendered within 20 days of the hearing, and concluded that when "a court issues an order after statutory time limits have passed, that order is a legal nullity." *Id.* at 322. This Court concluded that the trial court's order transferring jurisdiction in Green's case was issued after the 20-day time period, which meant that it had no legal effect. *Id.* The Superior Court then quashed the Commonwealth's appeal.

Seeking further review in the Pennsylvania Supreme Court, Green acknowledged that neither Section 6322 of the Juvenile Act nor Rule 597 provide exceptions to the 20-day time limit. *Id.* However, Green continued to maintain that the result was unfair and unreasonable, violating the

absurdity doctrine.[3]  Specifically, Green argued that "the interests of justice do not support rigid application of this time frame," and that, in his case, application of the 20-day decision period resulted in an "unreasonable and absurd outcome."  **Id.**  Green stressed that he was not responsible for the trial court's late filing or the Superior Court's determination that the court's late filing was a legal nullity.  **Id.**  Thus, he argued, the Court could insert the phrase "without cause shown" to both Section 6322(b) and Rule 597 to accommodate situations like his own, where the court reasonably needs more time to issue a ruling.  **Id.**  Green maintained that flexibility should be extended when good cause is shown for any delay.  **Id.**

In addressing Green's arguments, our Supreme Court held:

[T]he Superior Court interpreted Section 6322(b) of the Juvenile Act and Rule 597 to provide for a strict 20-day time frame within which the trial court must announce its decision.  **We perceive no other possible interpretation of that language.**

**Id.** at 328 (emphasis added).  Further, because neither the language of the statute nor that of the rule were ambiguous, the Court was without the

---

[3] The absurdity doctrine is generally referenced in early decisions of the United States Supreme Court, and can be defined as applying if (1) absurdity arises from a disposition, which no reasonable person could intend to occur, and (2) the absurdity must be reparable by changing or supplying a particular word or phrase, the inclusion or omission of which was an obvious technical or ministerial error.  **Green**, 291 A.3d at 323.

authority to insert additional language into the text.[4]  ***Id.***  Accordingly, the

Court declined to accept Green's absurdity-doctrine argument, stating:

> Considering those examples of instances where the absurdity doctrine may well apply, we cannot conclude that they equate to the circumstances at hand.  Here, the result is not absurd — the application of the clear language of the statute does not cause results that were not contemplated.  Nor does the application offend common sense, although some might find the policy behind the statutory provision and rule offensive or overly harsh.

***Id.*** at 330.[5]

After reviewing ***Green***, we would conclude that no published authority

permits a court to create an exception to the 20-day rule for issuing a decision

in a decertification case.  However, this would not end our inquiry, because

we would find that the 20-day rule was not violated under the circumstances

of this case.

In the trial court's opinion prepared in connection with this appeal, the

court offered two reasons that the order granting decertification should be

upheld.  First, the court asserted that the decertification hearing did not end

on April 3, 2024, because the record was not closed on that date.  Trial Court

_____

[4] Only when the language of a statute is ambiguous may courts look outside the plain language used in a statute and turn to principles of statutory construction to ascertain the General Assembly's intent in enacting that statute. ***See, e.g.***, ***Commonwealth v. Lehman***, 311 A.3d 1034, 1044 (Pa. 2024).

[5] In its decision, because of the arguments raised by Green, the Supreme Court did not consider the concept of waiver, nor did it assess whether this Court erred in concluding that the trial court's order granting decertification was a legal nullity.  ***Green***, 291 A.3d 320 n.6; ***id.*** at 322 n.10.

Opinion ("TCO"), 8/28/24, at 3. The court noted at this hearing that it wanted to review the prior transcripts in the case, as well as the exhibits and expert reports, and asked the parties to provide those documents in electronic format. N.T., 4/3/24, at 80-81 (the court's stating: "I don't have to have the electronic versions of anything today. I just would like to have them so that I can file them and make them a part of the permanent record. … Over here we file everything electronically. So whatever exhibits you have that have been admitted for both, I would like them at some point to be sent to me electronically"). Later that same day, the Commonwealth submitted via email various items, including a video that had been presented at the preliminary hearing. TCO at 2. Then, on April 18, 2024, defense counsel submitted to the court emails with multiple transcripts and exhibits used during the hearing. *Id.* at 3.[6] The trial court suggests that the decertification hearing did not close until all materials were received on April 18, 2024. Therefore, the decision rendered on April 29, 2024 occurred just 11 days after the close of the hearing, which means the decision was properly made within the required 20-day time period. *Id.* The juvenile, N.T., agrees with this assertion. Juvenile's Brief at 8-13. We would as well.

---

[6] According to defense counsel, at the April 3, 2024 hearing, he "admitted a series of Interest of Justice (hereafter IOJ) … transcripts marked as Defense Exhibit B." Juvenile's Brief at 5 (citation omitted). He explained that, "[w]hile the [d]efense did have paper copies of some of the IOJ transcripts, [d]efense did not have every IOJ transcript to supply at the hearing, knowing that the court wished for electronic submission of all of the exhibits." *Id.* at 6.

At the close of the April 3, 2024 hearing, the trial court indicated that it had not reviewed all the evidence, which included transcripts of several hearings and a video. The court also asked to review both expert reports. The parties did not object to the court's request for the items to be sent electronically. We would conclude that the evidentiary record did not close, and the 20-day time period for a decision contained in Section 6322 and Rule 597 did not begin to commence, until the court had all necessary materials for it to issue its decision on the decertification issue. This only occurred on April 18, 2024. Thus, even if we were not quashing this appeal, we would conclude that the court had 20 days from April 18, 2024, to make its decision and, thus, the ruling issued on April 29, 2024, was timely made.

Second, even if the decertification hearing had concluded on April 3, 2024, the trial court noted that both parties **agreed** to the trial court's announcing its decision in open court on April 29, 2024. Critical to our analysis is what transpired at the end of the April 3, 2024 hearing. After hearing final arguments from the parties on the decertification issue, the court stated:

> THE COURT: There is a lot of stuff now that I have to review, so obviously I can't make a decision today. I'm not sure even if I didn't have all this stuff to review I would make a decision today.
>
> I would say both counsel did a wonderful job presenting their case. The arguments on both sides are very compelling. It is not an easy decision to make, so I want to make sure I review everything and sit and weigh the factors as I feel I should do under the statute. I will set a date to announce my decision in open court.
>
> I do that for a couple reasons. One, it forces me to make a decision, because you shouldn't sit on it. The family of the deceased, they have been waiting for some time for some

- 15 -

resolution, to know one way or the other, and the juvenile and his family, he has been sitting in the jail waiting for a decision. Everybody is waiting, so I don't want to delay this any longer.

The [c]ourt should always announce their decisions in open court. I think under these cases I am required to do so. In some cases courts can enter an order or file an opinion, but I do feel that the public and I feel that people that have a real interest in the outcome should hear from the [c]ourt why the [c]ourt makes its decision, at least they know what was in Judge Clark's mind when she was considering the evidence.

I am going to find a date that we can do it. I am out pretty much all of next week and most of the following week. Today is April 3rd. I could do it [on] the 23rd, 24th, 25th. I have a decert[ification] hearing on the 26th. That is supposed to be my first day back, but I would come in to make the decision [on] the 23rd, the 24th, the 25th.

[THE COMMONWEALTH]: Unfortunately I am scheduled to be in a homicide jury trial that week. We are picking on the 22nd.

THE COURT: What about April 29th?

[THE COMMONWEALTH]: I am free that day, Your Honor.

THE COURT: We will have to find a courtroom. I would rather do it first thing in the morning. It depends on courtroom availability. I don't have my own courtroom anymore.

[DEFENSE COUNSEL]: I can make that date work, Your Honor.

THE COURT: So I would propose we do it at 9 o'clock or we do it in the afternoon, because sometimes courtrooms are tied up in the morning and free in the afternoon. I would prefer 9 [o']clock.

[THE COMMONWEALTH]: I have no preference.

THE COURT: I will let you know tomorrow what time, so April 29th.

[DEFENSE COUNSEL]: Thank you, Your Honor.

(Whereupon, this matter adjourned.)

N.T., 4/3/24, at 100-02.

Nowhere during the April 3, 2024 proceeding did the Commonwealth object to the trial court's setting a date for decision past the 20-day period as set forth in Section 6322(b) or Rule 597(D). In fact, it specifically requested that the hearing occur on the later date to accommodate its schedule in another trial. In addressing the decision to conduct the hearing on April 29, 2024, the trial court noted:

> I suppose that I could have told the Assistant District Attorney to send any warm body from the District Attorney's Office, but I feel that [it] is important for the lawyers who present the case to be present to hear the court's decision. Obviously, this is what the Assistant District Attorney wanted on April 3, 2024, when he consented to going beyond the [20] days. However, on April 29, 2024, the Assistant District Attorney apparently changed his mind after receiving a decision that he did not like and, rather than appeal my well-reasoned decision, he decided to question the jurisdiction of this court.

TCO at 4 (footnote omitted).

We recognize that, in **Green**, this Court determined that the trial court did not have authority to act on the transfer petition more than 20 days after the hearing on the petition to transfer. **See Green**, 291 A.3d at 322; **see also Commonwealth v. Green**, 265 A.3d 798 (Pa. Super. 2021). However, in that case, both parties did not agree to an extension of the 20-day time period in advance of its expiration. In contrast, here, both parties consented — before the 20-day deadline passed — to moving the trial court's decision

date to April 29, 2024.[7, 8]   Under these circumstances, even had the Commonwealth properly filed its appeal, and even if the hearing had concluded on April 3, 2024, we would decline to find that the trial court did not have the authority to enter the order when it did.

Appeal quashed.

Judge Lane joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/12/2025

_____

[7] We also reiterate that a senior judge with limited availability presided over the case *sub judice*, which further complicated scheduling.

[8] In addition, even at the April 29, 2024 proceeding, the trial court expressed concerns about having to enter an order that day because the court had to find an available detention bed for N.T.   **See** N.T., 4/29/24, at 17-18 ("I'm telling you what I'm ordering.  I'm not going to enter an order today because I have to find a place to put him.  He can't be released on [electronic home monitoring].  He can't be released to the community while this matter is pending.  I will continue this hearing."); **id.** at 20-21 ("Right now[,] I'm continuing the hearing.  When there is a bed, then I will enter the order.  … But I can't enter the order right now because I'm not going to release him to the community."); **id.** at 23 ("It's complicated not having a detention facility.  I can say that.  It's very complicated.").