J-A19024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON JOHN KLINGENSMITH | : | No. 99 WDA 2025 |

Appeal from the Order Entered January 23, 2025
In the Court of Common Pleas of Clearfield County
Criminal Division at No: CP-17-CR-0000473-2024

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED: January 23, 2026**

In this interlocutory appeal, the Commonwealth seeks review of an order transferring a criminal case to the Clearfield County Juvenile Division. Appellee, Aaron John Klingensmith, is alleged to have fatally shot a 12-year-old victim when he was 14 years old. The Commonwealth charged Appellee as an adult with several felony counts, including the non-delinquent act of criminal homicide (18 Pa.C.S.A. § 2501). Appellee petitioned to have the case decertified and transferred to the juvenile division. Appellee received a clinical evaluation, and the trial court held a hearing on Appellee's petition. The trial court entered a transfer order over 20 days after the date of the hearing. The Commonwealth now appeals that non-final order, contending that the trial court abused its discretion by improperly considering statutorily mandated factors that would weigh against a transfer. Finding no such error on the part of the trial court, we affirm.

The subject shooting allegedly took place on April 28, 2024.  As averred in the Commonwealth's affidavit of probable cause, Appellee found a handgun on top of his family's gun safe located in the living room of his home.  **See** Affidavit of Probable Cause, 5/2/2024, at p.6.  While sitting with the victim on a couch in the living room, he asked the victim if she wanted to see the weapon; as he did so, he discharged the weapon, striking the victim's head and causing fatal injuries.  **See id**.

Moments before the weapon was fired, Appellee asked whether it was loaded.  **See id**.  Appellee's father initially explained to the police that it would have been necessary for Appellee to chamber a round from the magazine in order for the weapon to be fired.  **See id**., at p.7.  Appellee subsequently stated in an interview with police that, without his parents' knowledge, he had previously handled the weapon and practiced chambering and unchambering rounds.  He told the police that he mistakenly believed there to be no round in the gun's chamber when he pulled the trigger.  **See** Evidentiary Hearing, 11/25/2024, at 29.

The victim was pronounced dead on May 1, 2024.  At the preliminary hearing held on May 17, 2024, the Commonwealth charged Appellee as an adult with one general count of criminal homicide (18 Pa.C.S.A. § 2501).  This count was in addition to the previously charged offenses of aggravated assault causing serious bodily injury; aggravated assault causing bodily injury with a deadly weapon; and recklessly endangering another person.

Appellee received a psychiatric evaluation by Dr. Veronique Valliere on August 11, 2024. Dr. Valliere opined in her report that Appellee did not act with malice, that the shooting was accidental, that he did not pose a risk to the public, and that he was amendable to treatment and rehabilitation. On September 9, 2024, Appellee filed a petition to decertify the criminal proceedings and transfer the case to the juvenile division. The trial court held a hearing on the petition on November 25, 2024.

Appellee presented the testimony of Dr. Valliere, and the Commonwealth relied solely on "the criminal complaint and affidavit of probable cause, criminal information, preliminary hearing transcript and recorded interview of the juvenile by the Pennsylvania State Police." Trial Court 1925(a) Opinion, 1/23/2025, at 2. At the conclusion of the evidentiary hearing, the trial court granted Appellee's petition, having determined that he made a "compelling case for the transfer of this matter from the adult to the juvenile division[.]" *Id*., at 3.

On January 23, 2005, as mandated by the Juvenile Act, the trial court entered a transfer order in which it made several factual findings as to the propriety of a transfer. The order closely tracked factors (A) through (G) of 42 Pa.C.S.A. § 6355(a)(4)(iii), which must be considered by a trial court when ruling on a transfer petition:

1. The Court accepts Dr. Valliere as an expert in psychology.

2. The Court finds the Testimony of Dr. Valliere to be truthful, convincing, and controlling.

- 3 -

3. The Court finds the clinical report of Dr. Valliere to be credible, convincing, and controlling.

4. The Court determines that [factor **(A)**] does not support the transfer of the case. The victim has paid with her life and her family and friends will suffer a lifetime.

5. The Court determines that [factor **(B)**] does not support transfer of the case. The foster parents, neighbors, and community will live with the trauma of seeing and experiencing the victim's death.

6. The Court determines that [factor **(C)**] supports transfer in that [Appellee] does not pose a threat to the safety of any individual or the public at large. "Diagnostically, [Appellee] does not meet criteria for any diagnosis that would be related to a future likelihood of violence." Valliere Report, p. 11.

7. The Court determines that [factor **(D)**], nature and circumstances, supports transfer because the actions of [Appellee] were not "intentional, planful, or likely to be repeated." Valliere Report, page 11.

8. The Court determines [that factor **(E)**] supports the transfer in that culpability is in the nature of an accident. "[Appellee] is a 14-year-old boy who committed an immature, impulsive act that resulted in his killing of his friend. The devastating nature of the crime is not mitigated by the fact that it appears to have been a tragic accident" however, culpability is mitigated.

"[Appellee] does not demonstrate any psychological or characterological issues that facilitated any malicious, intentional or retaliatory behavior. He does not demonstrate any characteristics that reveal cruelty, callousness, or obsession with killing, power, or death." Valliere Report, p. 9.

9. The Court determines that [factor **(F)**] supports the transfer. [Appellee] was a 14-year-old boy at the time of the offense. This means [Appellee] could be subject to the Juvenile Court's jurisdiction for up to seven years. (42 Pa.C.S.A. § 6302). The Court notes that the concerns raised in the report are not in the nature of his need for rehabilitation but his need for counseling to protect his mental health. Valliere Report, p. 9-11.

10. The Court determines that [factor **(G)**] supports the transfer. [Appellee] is amenable to treatment and supervision through the Juvenile Division of the Court.

  (I) [Appellee] was fourteen years old at the time of the offense.

  (II) [Appellee] has average I.Q. functioning with Specific Learning Disability and ADHD. Valliere Report, p. 9.

  (III) [Appellee's] maturity is limited by his age and his ADHD. Valliere Report, p. 7.

  (IV) There was no criminal sophistication involved.

  (V) No prior criminal record exists.

  (VI) No delinquency history.

  (VII) See paragraph 9 above.

  (VIll) The most telling factor concerning [Appellee's] institutional history is [that] this Court placed [Appellee] in a juvenile facility at the initiation of this case. The facility housed the "adult" as a courtesy. [Appellee] was never expelled from the facility and the courtesy remains in place which leads this Court to the conclusion that [Appellee] has substantially compiled with the facilities' rules. Valliere Report, p. 7.

  (IX) The Court finds that there are no other factors which would be contrary to transfer.

11. The Court finds as a matter of law that [Appellee] established by a preponderance of the evidence that the transfer requested will serve the public interest.

12. The Court finds as a matter of law that the record closed on January 9, 2025 and that this Order is timely pursuant to 42 Pa.C.S.A. § 6322(b).

Trial Court Order, 1/23/2025, at paras. 1-12 (emphasis added).

The trial court further elaborated on its findings in a 1925(a) opinion. **See** Trial Court 1925(a) Opinion, 1/23/2025, at 4-9. The trial court weighed factors (A) through (G) of subsection 6355(a)(4)(iii), and supported its findings with record evidence. **See id**. The trial court also examined relevant decisional law concerning how those factors must be balanced so as to ensure that a transfer will serve the public interest. **See id**., at 3-7.

Many of the trial court's findings were supported not just by the opinions of Dr. Valliere (who was found credible), but also the underlying circumstances of the incident, which suggested to the trial court that "this was not an act of malice or true disregard for human life, but rather, a stupid and reckless but honest and horrible mistake on the part of [Appellee]." **Id**., at 6.

The Commonwealth timely appealed, asserting that the trial court's transfer order should be vacated because Appellee "did not prove by a preponderance of the evidence the factors set forth in 42 Pa.C.S.A. § 6355 . . . would best serve the public interest[.]" Commonwealth's Brief, at 6 (numbering and suggested answer omitted).[1]

---

[1] The Commonwealth also has briefed the issue of whether Appellee's petition to transfer to the juvenile division was denied by operation of law 20 days after it was filed. Under 42 Pa.C.S.A. § 6322(b), such petitions must be deemed denied if not ruled upon within that period. **See** Commonwealth's Brief, at 29-31. However, the Commonwealth expressly has taken no position with respect to this issue, instead merely requesting this Court to discuss the applicability of that timing provision for purposes of "clarification." **See** Commonwealth's Brief, at 31. The timing of the order on review, and the concomitant jurisdictional issues, will be addressed below.

From what we can glean, the Commonwealth's primary contention is that the trial court incorrectly assessed factors (C), (D), (E), and (F) by construing the incident as "an accident" for which a lower degree of culpability would be warranted. *See* Commonwealth's Brief, at 22-28. The Commonwealth stresses further that the undisputed facts establish that Appellee acted with "wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another." Commonwealth's Brief, at 24.

Before considering those arguments, however, we will first address a preliminary matter that relates to this Court's jurisdiction, an issue which may be raised *sua sponte*. *See Commonwealth v. Lindey*, 760 A.2d 416, 418 (Pa. Super. 2000).

The order on review was entered over 20 days after the hearing on Appellee's petition to transfer. A mechanical application of the governing statutes and rules would therefore compel this Court to treat the transfer order as a legal nullity; quash the Commonwealth's appeal; and remand the case with instructions to the clerk of court to enter an order denying Appellee's petition.[2]

Section 6322(b) of the Juvenile Act provides in pertinent part that "[i]f the [trial] court does not make its finding within 20 days of the hearing on the

---

[2] The record reflects that the clerk of court did not enter an order dismissing Appellee's transfer petition 20 days after the hearing on the petition took place, as was required by Pa.R.Crim.P. 597(D).

petition to transfer the case, [then] the defendant's petition to transfer the case shall be denied by operation of law." 42 Pa.C.S.A. § 6322(b).

Similarly, Pennsylvania Rule of Criminal Procedure 597 provides that:

(C) At the conclusion of the hearing, but in no case longer than 20 days after the conclusion of the hearing, the judge shall announce the decision in open court. The judge shall enter an order granting or denying the motion for transfer[ ] and set forth in writing or orally on the record the findings of fact and conclusions of law.

(D) If the judge does not render a decision within 20 days of the conclusion of the hearing, the motion for transfer shall be denied by operation of law. The clerk of courts immediately shall enter an order on behalf of the judge.

Pa.R.Crim.P. 597.

These timing provisions are to be strictly enforced, and cannot be extended, even by the agreement of the parties or a showing of "good cause." *See generally Commonwealth v. Green*, 291 A.3d 317 (Pa. 2023). In *Green*, our Supreme Court unanimously held that section 6322 and Rule 597 "clearly and unambiguously dictate a mandatory rule: the lower court must take action on later than [20] days after the conclusion of the [decertification] hearing." 291 A.3d at 326 (internal citations omitted).

A transfer order entered beyond this 20-day period is a "legal nullity" because by then, the trial court no longer has jurisdiction for purposes of ruling on the petition to transfer, which is then deemed denied by operation of law. *See Commonwealth v. Spencer*, 496 A.2d 1156, 1160 (Pa. Super. 1985). An appeal taken from a legally null order is likewise a nullity and "must be

quashed." *See id*.; *see also Commonwealth v. Martinez*, 141 A.3d 485, 490-91 (Pa. Super. 2016).

In the present case, the hearing on the transfer petition was held on November 24, 2024, and the order was entered over 20 days later, on January 23, 2025. A strict application of section 6322 and Rule 597 would divest the trial court of jurisdiction to grant Appellee's petition to transfer prior to the date on which the subject order was entered.

However, there is a narrow exception which did not come into play in *Green* and which we find to be applicable in this case.[3] In situations where a delay in the proceedings is attributable to a breakdown in court operations, and the delay causes a jurisdictional defect, this Court may decline to enforce a resulting procedural bar. *See generally Commonwealth v. Patterson*, 940 A.2d 493, 498, 499 (Pa. Super. 2007) (compiling cases in which a procedural bar was overlooked to remedy a court breakdown, such as situations where the trial court has misadvised or misled parties about how to vindicate their rights).

At the conclusion of Appellee's evidentiary hearing, his counsel stated that no briefing was needed in order for a ruling to be entered. The

___

[3] The trial court in *Green* had correctly acknowledged that it had to enter a ruling within 20 days from the date on which it held the evidentiary hearing on the motion to transfer. *Commonwealth v. Green*, 291 A.3d 317, 320 (Pa. 2023). Nevertheless, the trial court did not enter its order granting the transfer until 50 days after the hearing had taken place. *See id*. The Commonwealth appealed, and this Court quashed the appeal on the ground that both the order and the appeal were legal nullities; our Supreme Court upheld that disposition. *See id*.

Commonwealth, however, took issue with Appellee's "intent to expedite this" and asked for time to submit an initial brief, as well as a reply brief prior to the ruling on the petition. *See* Evidentiary Hearing, 11/25/2024, at 47. The Commonwealth did not specify any particular amount of time being requested. *See id*.

The trial court then instructed the parties that they "have no more than 25 days from this date in which to submit appropriate letter brief[s] to the Court." *Id*., at 47-48. Another seven days were granted for reply briefs. *See id*., at 49. The final deadline for this briefing schedule concluded on January 9, 2025.

Notably, the specific amounts of time allotted for briefing were proposed solely by the trial court, not the Commonwealth. It is undisputed that the trial court mistakenly believed that the record for the transfer proceedings would effectively close on the date that reply briefs were due, and the Commonwealth argued as much in its reply to Appellee's petition to transfer. *See* Trial Court Supplemental 1925(a) Opinion, 2/3/2025, at 1-2.

These actions by the trial court would have plainly conveyed to Appellee that, following the submission of briefs, he would receive the benefit of a ruling on the merits of his petition to transfer. That is, the trial court was expressly, or impliedly, advising Appellee that the briefing schedule would ***not*** cause him

to lose his right to a favorable ruling on the transfer request.[4] He was told he would "have" the stated number of days in which to submit briefing on the merits of his petition. This was patently incorrect, as Appellee had no more than 20 days, at which point his petition to transfer would be denied by operation of law.

Accordingly, the trial court's mistake in granting the Commonwealth's request, and permitting the Commonwealth to file briefs beyond the 20-day jurisdictional deadline for a ruling, was a breakdown in court operations. The remedy for that breakdown is for this Court to excuse the untimeliness of the trial court's order granting a transfer and to give that order the trial court's intended effect.

Having resolved that threshold jurisdictional issue, we now turn to the merits of the Commonwealth's appeal. The Commonwealth's primary

_____

[4] This scenario is analogous to cases in which defendants relied on the misadvise, misinformation, or lack of guidance by the trial court as to how to timely file a notice of appeal, resulting in the loss of appellate rights. **See generally Commonwealth v. Stansbury**, 219 A.3d 157, 160 (Pa. Super. 2019) (explaining that appellate courts will routinely opt not to quash appeals based on a defect caused by misinformation relayed by the trial court); **see also Commonwealth v. Young**, 26 A.3d 462, 469-70 (Pa. 2021) (same); **Commonwealth v. Larkin**, 235 A.3d 350, 353-55 (Pa. Super. 2020) (*en banc*) (same). For example, trial courts have on numerous occasions advised defendants that they may file a single notice of appeal to seek review of matters at multiple trial court docket numbers. Rather than quash those appeals due to a violation of Pa.R.A.P. 341, our prevailing practice is to permit the appeals to go forward, notwithstanding the jurisdictional defect. **See Young**, 26 A.3d at 469.

contention is that the trial court abused its discretion in granting Appellee's petition.

"Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion." *Commonwealth v. Ramos*, 920 A.2d 1253, 1257(Pa. Super. 2007) (citation omitted). "An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will." *Commonwealth v. Sanders*, 814 A.2d 1248, 1250 (Pa. Super. 2003) (citation omitted); *see also Commonwealth v. Moss*, 543 A.2d 514, 516 (Pa. 1988) ("A gross abuse of discretion is not demonstrated by merely reciting facts of record that would support a result contrary to the court's actual decision.").[5]

One of the express purposes of the Juvenile Act is to protect the public by providing children who commit "delinquent acts" with "programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed" and helping children become "productive members of the community." 42 Pa.C.S.A. § 6301(b)(2).

The Juvenile Act defines a "child" as a person who is under the age of 18. *See* 42 Pa.C.S.A. § 6302. Although most juvenile offenders are tried

---

[5] "[T]here is no distinction between a **gross abuse of discretion** standard of review and an abuse of discretion standard." *Commonwealth v. Brown*, 708 A.2d 81, 84 (Pa. 1998) (emphasis in original).

before a juvenile court, several serious offenses, such as murder, have been statutorily excluded from the definition of a "delinquent act." ***See*** 42 Pa.C.S.A. §§ 6322(a), 6355(e). Juveniles charged with such crimes are subject to the jurisdiction of the criminal division of the Court of Common Pleas. ***See*** 42 Pa.C.S.A. § 6302.

A juvenile charged with a non-delinquent, criminal offense may petition the trial court to have the case transferred through a "process called 'decertification.'" ***Commonwealth v. Brown***, 26 A.3d 485 (Pa. Super. 2011). Under subsection 6322(a) of the Juvenile Act, a child charged with murder has the burden of proving "by a preponderance of the evidence that the transfer will serve the public interest." 42 Pa.C.S.A. § 6322(a). "A preponderance of the evidence is tantamount to a 'more likely than not' standard." ***Commonwealth v. Esquilin***, 880 A.2d 523, 529 (Pa. 2005) (citation omitted).

Subsection 6355(a)(4)(iii) of the Juvenile Act enumerates the following factors which the trial court must consider when ruling on whether a transfer to juvenile court will serve the public interest:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

> (I) age; (II) mental capacity; (III) maturity; (IV) the degree of criminal sophistication exhibited by the child; (V) previous records; if any; (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child; (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction; (VIII) probation or institutional reports, if any; (IX) any other relevant factors;

42 Pa.C.S.A. § 6355(a)(4)(iii)(A)-(G).

The Juvenile Act requires the trial court to consider all of these factors, and it is within the trial court's discretion to "weigh the factors as it deems appropriate." *See Commonwealth v. S.B.*, No. 1812 EDA 2023 at *6 (Pa. Super. September 17, 2024) (unpublished memorandum opinion). The trial court "need not address, seriatim, the applicability and importance of each fact and fact in reaching its final determination." *Commonwealth v. Ruffin*, 10 A.3d 336, 339 (Pa. Super. 2010) (citation omitted).

Here, the trial court determined that factors (A) and (B) weighed against the transfer of Appellee's case, and the Commonwealth does not challenge that finding.

As to factor (C) – the threat to the public posed by Appellee – the Commonwealth argues that the trial court "incorrectly determined this factor

in favor of Appellee" because "Dr. Valiere indicated that there could be some issues in the future if not properly handled . . . during these formative years." Commonwealth's Brief, at 23.

However, Dr. Valliere's concern was in the context of Appellee's "interpersonal problems and character traits related to narcissism, like his arrogance, demeaning behavior, defensiveness, and avoidance." Commonwealth's Brief in Opposition to Transfer, 1/2/2025, at 4 (quoting Dr. Valliere's report). Dr. Valliere in no way referred to those character traits as potential causes of violent behavior. Rather, Dr. Valliere stated that these issues "can be addressed before they become entrenched and seem to be related to poor coping to avoid dealing with his vulnerabilities." *Id*.

The trial court found Dr. Valliere credible and accepted her assessment that Appellee would not be a threat to public safety:

> [Appellee] has no prior criminal record and was considered to have been honest during his interview with the expert witness in clinical psychology, Dr. Valliere, about what happened when he shot the victim. The testimony of Dr. Valliere was not rebutted by the Commonwealth, and this Court finds her testimony to be perfectly credible.
>
> Additionally, [Appellee] has shown no behavioral issues, diagnosed mental disorders or anti-social personalities, with the exception of an ADHD diagnosis. [Appellee] also appeared deeply remorseful and broke down crying when discussing what he had done with Dr. Valliere. He told his father he had shot the victim immediately after it happened and was "honest about himself" when talking with Dr. Valliere as well. Dr. Valliere gave [Appellee] a survey that assesses for potential risks of future violence, and [Appellee] had no risk factors suggesting future violent behavior.

* * * *

- 15 -

> While [Appellee's] offense in the case at bar was extremely violent, there is no or little evidence or motive to show it was a deliberate act of malice towards the victim in the same way kicking or punching would be. [Appellee] stated that he believed the gun was unloaded, and at the time of his interview with Dr. Valliere, [Appellee] seemed regretful and as though he did not "fully grasp" that the victim -- a friend of [Appellee] -- was deceased and he would never be able to talk to her again. Dr. Valliere also stated that she did not believe him to be a threat to public safety. For these reasons, it is likely [Appellee] is not a threat to public safety.

Trial Court 1925(a) Opinion, 1/23/2025, at 5-6.

The trial court's findings as to factor (C) are supported by the record, and we find no abuse of discretion in the trial court's conclusion that this factor supports the transfer of Appellee's case.

The Commonwealth's next claim is that the trial court abused its discretion in finding that factor (D) – the nature and circumstances of the offense – weighs in favor of a transfer. According to the Commonwealth, the evidence shows that Appellee knew the handgun he held was loaded when he shot the victim, refuting the trial court's view that the incident was an accident. *See* Commonwealth's Brief, at 23-24.

At this stage of the case, we cannot agree with the Commonwealth that Appellee's intent to shoot the victim is so clear-cut. Appellee himself stated to police that he did not know a bullet was chambered in the weapon, and there is no evidence that the shooting was premeditated. Dr. Valliere opined that Appellee had no intention of killing the victim, and the Commonwealth has introduced no evidence which would undermine that assessment.

Appellee's intent will ultimately be a trial issue for the finder of fact and in the meantime, for purposes of the decertification proceeding, it was within the trial court's discretion to accept Dr. Valliere's opinion as credible, and to conclude from the available evidence that Appellee more likely than not made an "honest and horrible mistake." Trial Court 1925(a) Opinion, 1/23/2025, at 6. Thus, we find that the trial court did not abuse its discretion as to this factor.

With respect to factor (E) – the degree of culpability – the Commonwealth again challenges the trial court's view that the shooting was an accident. The Commonwealth's position is that the record facts do not at all support that determination, and that the trial court abused its discretion in finding that the factor weighed in favor of transfer. For the reasons previously stated, however, we find no abuse of discretion as to factor (E).

The Commonwealth's claim with respect to factor (F) – the adequacy and duration of dispositional alternatives available in the juvenile and criminal systems – is that, since Appellee committed murder, he will not receive sufficient supervision if the case is transferred. *See* Commonwealth's Brief, at 25. Again, we find that the trial court did not abuse its discretion because its findings were supported by the record:

> Here, [Appellee] is only fourteen years old, which means he is much more susceptible to impulsivity and is still maturing as a young teenager in a way a sixteen or seventeen-year-old is not. Additionally, he would have seven years in the juvenile system before release, which is a significant amount of time and several years longer than the juveniles would have had in the previous

cases. Most notably, the juvenile has no prior record and has not been in the criminal justice system before. The incident is believed by the Court to be most probably a tragic accident and stupid mistake, not an act of malice, and Dr. Valliere outright stated that she believes [Appellee] would be amenable to treatment.

Trial Court 1925(a) Opinion, 1/23/2025, at 8. Thus, we find no abuse of discretion as to the trial court's findings with respect to factor (F).

The Commonwealth's final claim concerns factor (G) – Appellee's amenability to treatment, supervision or rehabilitation as a juvenile. This is a multi-pronged factor that, in relevant part, requires the trial court to consider a juvenile's age; mental capacity; maturity; degree of criminal sophistication; prior delinquent history; prospects for rehabilitation; and any other relevant information. **See** 42 Pa.C.S.A. § 6355(a)(4)(iii)(G). The Commonwealth acknowledges that "Appellee could potentially be amenable to treatment," but argues that he cannot be meaningfully rehabilitated in the juvenile system within the six years of eligibility that remain. **See** Commonwealth's Brief, at 26-27.[6]

Once more, the trial court's findings were appropriately based on credible record evidence:

As previously stated, Dr. Valliere believes [Appellee] is amenable to treatment and has shown no violent tendencies or risk factors. While she describes [Appellee] as having a bit of arrogance of grandiose personality, she believes it stems from [Appellee] having

---

[6] Appellant is now about 15 years old, and juvenile supervision must terminate no later than his 21st birthday, leaving six years. **See Commonwealth v. Ruffin**, 10 A.3d 336, 340 (Pa. Super. 2010) ("[T]he juvenile division's jurisdiction over [the child] ends when he turns 21[.]").

a learning disability and not wanting to be perceived as stupid by peers, rather than it being an anti-social or criminogenic trait.

* * * *

[Appellee] is young and still a bit immature and does not seem to grasp the gravity of what has happened. Therefore, he does not show the mental capacity a dangerous or repeating offender may have. Additionally, [Appellee] did not commit a crime that involved any real level of criminal sophistication. He believed the weapon was unloaded, pulled the trigger spur of the moment, and the actions he took were described by Dr. Valliere as a tragic accident. [Appellee] has not gotten into any significant trouble at school and has no prior delinquent acts or behavioral issues.

Lastly, it seems as though there is a significant amount of benefit [Appellee] would receive from an appropriate placement in a juvenile facility. [Appellee] would have treatment up to seven years to receive therapy, discipline, and rehabilitation within a juvenile placement. For these reasons, this Court finds that [Appellee] is amenable to treatment.

Trial Court 1925(a) Opinion, 1/23/2025, at 9.

In sum, the trial court weighed all of the statutory factors and found that Appellee had established by a preponderance of the evidence that the transfer of his case to the juvenile division would be in the public's interest. The trial court demonstrated a clear understanding of Dr. Valliere's testimony, and found her opinions to be credible. Although the trial court found that factors (A) and (B) weighed against transfer, it was within the trial court's discretion to determine that the remaining factors nevertheless established that Appellee's transfer petition should be granted. As the trial court did not abuse its discretion in weighing the statutory factors, and the Commonwealth's arguments are otherwise without merit, the order transferring Appellee's case to the juvenile division must be upheld.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/23/2026</u>